**Linda SMITH, Appellant**

v.

**NORTON HOSPITALS, INC., d/b/a Norton Suburban Hospital; Tony Rednour; Securitas Security Services USA, Inc.; Brooks Security, LLC; Kelvin Brooks; and David Rednour, Appellees**

NO. 2014–CA–001126–MR

Court of Appeals of Kentucky.

RENDERED: MARCH 4, 2016; 10:00 A.M.

BRIEF FOR APPELLANT: James M. Bolus, Jr., A. Nicholas Naiser, Brennan J. Soergel, Louisville, Kentucky

BRIEF FOR APPELLEES, BROOKS SECURITY, LLC, AND KELVIN BROOKS: R. Dale Warren, Louisville, Kentucky

BRIEF FOR APPELLEES, NORTON HOSPITALS, INC., AND DAVID REDNOUR: Craig C. Dilger, Matthew R. Lindblom, Louisville, Kentucky

BRIEF FOR APPELLEES, SECURITAS SECURITY SERVICES USA, INC., AND TONY REDNOUR: Brian J. Augustine, Cincinnati, Ohio

BEFORE: DIXON, JONES, AND KRAMER, JUDGES.

*OPINION*

KRAMER, JUDGE:

Linda Smith appeals from a summary judgment the Jefferson Circuit Court entered dismissing various tort claims she asserted against the above-captioned appellees. Upon review, we affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

The relevant facts, procedural posture of this case, and the issues to be resolved in this appeal are largely discussed in the circuit court's order of summary judgment. In relevant part, it provides:

This matter comes before the Court on Motions for Summary Judgment filed by Defendants Norton Suburban Hospital ("Norton"), David Rednour ("David"), Securitas Security Services, USA, Inc.

("Securitas"), and Tony Rednour ("Tony"). Plaintiff Linda Smith ("Smith") has responded, and the matter is now submitted.

On March 21, 2012, Smith visited her son, who was a patient at Norton Suburban Hospital. An off-duty Louisville Metro Department of Corrections officer, Benjamin Phillips ("Phillips") was working security at Norton and was stationed outside Smith's son's room. Security was assigned to the room because Smith's son had allegedly made threats to Norton's staff. According to Smith, Phillips was dressed in plain clothes, and was sitting in a chair across the hall from her son's room and was playing a handheld video game. When Smith approached her son's room, she claims she did not see his name on the door and became upset, fearing him to be dead. She alleges Phillips refused to let her enter the room, and yelled at her to get out of the hallway. Phillips claims he advised her she needed to check in at the nurses' station prior to visiting the patient. Smith admits that after being refused immediate entry to her son's room, she said either "What if I have a gun in my purse?" or "I have a gun in my purse" and turned to walk away. Believing there to be an immediate threat to his safety, and those nearby, Phillips attempted to grab Smith's purse to check for a gun. During this incident, Smith's son came out of his room and began verbally assaulting Phillips and attempted to hit him. Smith alleges Phillips violently pushed her against a wall and detained her, causing her injuries that required back surgery. A gun was not found in Smith's purse.

We add that in her various pleadings and appellate brief in this matter, Smith admits that Phillips identified himself as "a cop" shortly before she said either "What if I have a gun in my purse?" or "I have a gun in my purse."

Based upon these events, Smith brought claims of negligence, assault, battery, false imprisonment, and intentional infliction of emotional distress directly against Phillips. She asserted the same claims against three other individuals who were working as security guards at Norton (David and Tony Rednour, and Kelvin Brooks). Through the doctrines of vicarious liability and respondeat superior, she also sought to impute liability for these claims upon what she asserted were the employers and principals of these individuals (*i.e.*, Norton, along with Securitas and Brooks Security). Lastly, and also relating to the above-described events, she brought claims of negligent hiring and supervision directly against Norton, Securitas, and Brooks Security.

For the various reasons discussed below, the circuit court ultimately dismissed the balance of Smith's claims in response to the motions for summary judgment mentioned in the preface of the above-quoted order.[1] This appeal followed. Additional information relating to this matter will be discussed as necessary in the course of our analysis.

## STANDARD OF REVIEW

Summary judgment serves to terminate litigation where "the pleadings, depositions, answers to interrogatories, stipulations, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and

---

1. Phillips is no longer a party to this litigation; Smith decided not to pursue her suit against Phillips and dismissed her suit against him after he filed for bankruptcy. Also, and as discussed in our analysis, Brooks Security and Kelvin Brooks did not move for summary judgment.

that the moving party is entitled to a judgment as a matter of law." Kentucky Rules of Civil Procedure (CR) 56.03. It is well established that a party responding to a properly supported summary judgment motion cannot merely rest on the allegations in his pleadings. *Continental Casualty Co. v. Belknap Hardware & Manufacturing Co.*, 281 S.W.2d 914 (Ky.1955). "[S]peculation and supposition are insufficient to justify a submission of a case to the jury, and ... the question should be taken from the jury when the evidence is so unsatisfactory as to ... resort to surmise and speculation." *O'Bryan v. Cave*, 202 S.W.3d 585, 588 (Ky.2006) (citing *Chesapeake & Ohio Ry. Co. v. Yates*, 239 S.W.2d 953, 955 (Ky.1951)). " 'Belief' is not evidence and does not create an issue of material fact." *Humana of Kentucky, Inc. v. Seitz*, 796 S.W.2d 1, 3 (Ky.1990); *see also Haugh v. City of Louisville*, 242 S.W.3d 683, 686 (Ky.App.2007) ("A party's subjective beliefs about the nature of the evidence is not the sort of affirmative proof required to avoid summary judgment.") Furthermore, the party opposing summary judgment "cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must present affirmative evidence in order to defeat a properly supported motion for summary judgment." *Steelvest, Inc. v. Scansteel Service Center, Inc.*, 807 S.W.2d 476, 481 (Ky.1991) (internal citations and quotations omitted).

On appeal, we must consider the evidence of record in the light most favorable to the nonmovant and must further consider whether the circuit court correctly determined that there were no genuine issues of material fact and that the moving party was entitled to judgment as a matter of law. *Scifres v. Kraft*, 916 S.W.2d 779, 781 (Ky.App.1996). "Because summary judgment involves only legal questions and the existence of any disputed material issues of fact, an appellate court need not defer to the trial court's decision and will review the issue *de novo*." *Lewis v. B & R Corp.*, 56 S.W.3d 432, 436 (Ky.App.2001) (footnote omitted).

### ANALYSIS

**1. Vicarious liability claims against Norton and Securitas**

The circuit court found that Norton and Securitas could not be held vicariously liable for Phillips's conduct toward Smith because, by virtue of qualified immunity, Phillips's conduct was not legally actionable.

Qualified immunity for tort liability applies to (1) discretionary acts or functions (2) performed in good faith (3) that are within the scope of an official's authority. *See Yanero v. Davis*, 65 S.W.3d 510, 522 (Ky.2001). Smith concedes that metropolitan and urban-county government correctional officers such as Phillips are entitled to qualified immunity for their official conduct. However, she argues that the defense of qualified immunity should have failed in the instant matter because: (1) at the time of the events allegedly giving rise to tort liability described above, Phillips was off duty, working a different job away from any correctional facility, and thus was working outside the scope of his employment as a correctional officer;[2]

---

2. Smith derives her support for this aspect of her argument entirely from non-Kentucky case law. Suffice it to say that some jurisdictions support her point of view, while others do not. For a general overview of the various approaches employed in this context by different jurisdictions, *See generally* Patricia Kubovsak Golla, Annotation, *Performance of Public Duty by Off–Duty Police Officer Acting as Private Security Guard*, 65 A.L.R.5th 623 (1999) (collecting cases). It is unnecessary to address the various approaches taken in those

and (2) Phillips's decision and resulting efforts to search her were, she asserts, nondiscretionary acts.

But, the first prong of Smith's argument is inconsistent with the breadth of Phillips's statutory authority as a "peace officer." Pursuant to Kentucky Revised Statutes (KRS) 446.010(31), "peace officer[s are] sheriffs, constables, coroners, jailers, *metropolitan and urban-county government correctional officers*, marshals, policemen, and other persons with similar authority to make arrests." [3] (Emphasis added.) And, pursuant to KRS 431.005(1), a peace officer may make an arrest:

(a) In obedience to a warrant; or

(b) Without a warrant when a felony is committed in his or her presence; or

(c) Without a warrant when he or she has probable cause to believe that the person being arrested has committed a felony; or

(d) Without a warrant when a misdemeanor, as defined in KRS 431.060, has been committed in his or her presence; or

(e) Without a warrant when a violation of KRS 189.290, 189.393, 189.520, 189.580, 511.080, or 525.070 has been committed in his or her presence, except that a violation of KRS 189A.010 or KRS 281A.210 need not be committed in his or her presence in order to make an arrest without a warrant if the officer has probable cause to believe that the

person being arrested has violated KRS 189A.010 or KRS 281A.210; or

(f) Without a warrant when a violation of KRS 508.030 has occurred in the emergency room of a hospital without the officer's presence if the officer has probable cause to believe that the person being arrested has violated KRS 508.030. For the purposes of this paragraph, "emergency room" means that portion of a licensed hospital which has the primary purpose of providing emergency medical care, twenty-four (24) hours per day, seven (7) days per week, and three hundred sixty-five (365) days per year[.]

Peace officers also have authority to issue citations for misdemeanors committed in their presence. *See generally* KRS 431.015.

■ With that said, nothing in KRS 431.005 or KRS 431.015 limits a peace officer's arrest or citation authority to any particular location or facility; subject to exceptions, a peace officer's jurisdiction to arrest and to issue citations typically encompasses the territorial limits of the appointing authority. *See* 8 Ky. Prac.Crim. Prac. & Proc. § 18:114 (5th ed.); *see also* Kentucky Attorney General Opinion (Ky. OAG) 82–422 (explaining a validly appointed deputy jailer can make arrests for misdemeanors in the county including drunkenness and traffic violations. Even though the deputy may be remiss in his duties at the jail, he may still make such arrests.).[4] Indeed, if a metropolitan and urban-county

---

differing jurisdictions, however, because (as discussed below) Kentucky law effectively disposes of Smith's argument.

**3.** KRS 446.010(31) has provided the definition of "peace officer" since July 12, 2012. At the time of the events forming the basis of this litigation, this same definition applied but was instead provided by KRS 446.010(25).

**4.** In a similar vein, *see also* Ky. OAG 80–231:

[S]ince the county jailer and his deputies are peace officers they may issue traffic citations pursuant to and in accordance with the provisions of KRS 431.015 for misdemeanors or violations committed in their presence. . . . While the county jailer and his deputies may under the proper circumstances utilize the provisions of KRS 431.015, their primary function is to attend to the county jail and the persons confined in the jail. They have no statutory obli-

government correctional officer's arrest and citation authority were strictly limited to the *inside of a correctional facility*, as Smith's argument posits, then much of the authority granted to them as peace officers would be meaningless. By way of illustration, *see, e.g.*, KRS 431.005(1)(e) and (f) (respectively authorizing all peace officers to enforce drunk driving statutes and to arrest for certain criminal violations occurring in a hospital).[5]

Similarly, nothing in either statute limits a peace officer's arrest or citation authority to on-duty hours. To the contrary, the Kentucky Supreme Court has explained that one reason the General Assembly regulates the off-duty employment of peace officers is

> [i]n the event a police officer observes an altercation or other possible criminal activity, a decision must be made whether a criminal violation has occurred and whether an arrest is warranted. Frequently, the decision is not clear-cut and requires the exercise of considerable discretion. In such circumstances, an off-duty officer employed by the proprietor of the business establishment would face a dilemma as to the extent, if any, the officer's duties should be influenced by the command of the off-duty employer. It is a virtual *fait accompli* that official conduct would be influenced by the wishes of the employer.

*Puckett v. Miller*, 821 S.W.2d 791, 795 (Ky.1991).

With this in mind, the first prong of Smith's argument is wholly without merit. Even though Phillips was an off-duty metropolitan and urban-county government correctional officer during the events forming the basis of this matter, Phillips remained a peace officer and retained the authority of that office because he was in a location within the territorial limits of the authority that appointed him as a peace officer.

Furthermore, Phillips acted in response to what Smith admitted was her "distraught" manner, her admitted *threat* that she was carrying a gun in a public place (*i.e.*, a hospital), and the clear implication of her threat that she might use it at that time. Thus, while Smith's conduct could certainly be characterized as offensive to the interests of the hospital and Phillips's private security employers, it was *also* an offense against the Commonwealth and could reasonably have formed the basis of a legal misdemeanor arrest; as the circuit court put it, Smith's threatening behavior "breached the peace."[6]

Moving on, the second prong of Smith's argument is that Phillips's deci-

---

**5.** As noted in *Howard v. Transportation Cabinet, Com. of Ky.*, 878 S.W.2d 14, 17 (Ky.1994),
> gation to patrol the streets and highways and their duties associated with the jail must not be neglected in favor of apprehending traffic violators, a function which would normally be handled by police officers.

While we are not bound by opinions of the Attorney General, this Court can afford them great weight. *Louisville Metro Dept. of Corrections v. King*, 258 S.W.3d 419, 421–22 (Ky. App.2007) (citation omitted). Our review of these OAG opinions reveals that the OAG's opinions are carefully considered, clearly stated, and based upon a correct understanding of the law.

KRS 189.520(2) states, "No peace officer or state police officer shall fail to enforce rigidly this section and KRS 189A.010 through 189A.090, [the DUI statutes]." Such a powerful imperative makes obvious the legislature's direct intention to institute a policy whereby all peace officers with varying jurisdictions, both geographical and otherwise, are mandated to arrest offenders of DUI statutes.

**6.** The circuit court generally characterized Smith's behavior as a breach of the peace. Among other things, it could have been categorized as misdemeanor terroristic threatening. *See* KRS 508.080(1), providing in relevant part:

sions to search, arrest, or detain her were nondiscretionary acts and thus exempt from the shield of qualified immunity. This contention is also without merit. As noted in Puckett, 821 S.W.2d at 795, supra, a peace officer's ultimate decision regarding "whether a criminal violation has occurred and whether an arrest is warranted . . . is not clear-cut and requires the exercise of considerable discretion." We also add, although the issues are not raised in Smith's brief, that "peace officers can make a forcible, brief investigatory stop even where probable cause for arrest is lacking if they can demonstrate articulable suspicion of criminal activity." Martin v. Commonwealth, 592 S.W.2d 134, 138–139 (Ky.1979). Moreover, the determination of the amount of force required to effect the investigatory stop or arrest is likewise a discretionary act within the scope of a peace officer's authority. Nichols v. Bourbon County Sheriff's Dept., 26 F.Supp.3d 634, 642 (E.D.Ky.2014); see also KRS 503.090.

■■■ With the above in mind, we find no error in the circuit court's determina-

tion that Phillips was entitled to defend against Smith's claims of negligence, assault, battery, false imprisonment, and intentional infliction of emotional distress— all of which Smith alleged stemmed from Phillips's decision to forcibly stop her and search her purse for the weapon she threatened to have—on the basis of qualified immunity. Nor, for that matter, do we find any error in the circuit court's decision to cite qualified immunity as a basis for dismissing these claims: Smith's arguments on appeal (as they were below) are not directed toward whether the actions Phillips took in the course and scope of his authority as a peace officer were indicative of bad faith.[7] Rather, they are limited to the all-or-nothing proposition that Phillips had no authority or privilege to search and detain her at all.

■■■ Finally, Smith's claims against any of the other appellees on the basis of vicarious liability for those same claims necessarily fail. "Vicarious liability extends only to negligent acts of an agent committed in the course and scope of the principal's business." Roethke v. Sanger,

Except as provided in KRS 508.075 or 508.078, a person is guilty of terroristic threatening in the third degree when: (a) He threatens to commit any crime likely to result in death or serious physical injury to another person or likely to result in substantial property damage to another person[.]

7. A panel of this Court clarified this point in Dunn v. Felty, No. 2004–CA–001029–MR, 2005 WL 736596 at *2 (Ky.App. April 1, 2005), an opinion we find persuasive and proper to cite per Kentucky Rules of Civil Procedure (CR) 76.28(4)(c). Dunn explains that in an action for false imprisonment, false arrest, or assault or battery arising in the course thereof, the focus is on whether the peace officer "had reasonable grounds to believe and did believe in good faith that the plaintiff had committed an arrestable offense, and whether the officer used excessive force

in making the arrest. The officer is liable for false arrest and battery if he lacked reasonable grounds for the arrest, or if the officer had a reasonable basis for the arrest but used more force than was necessary."

We add that a claim for intentional infliction of emotional distress is also intended as a "gap-filler," providing redress for extreme emotional distress where traditional common law actions do not. Where, as here, an actor's conduct allegedly amounts to the commission of one of the traditional torts such as assault, battery, or negligence for which recovery for emotional distress is allowed and the conduct was not intended only to cause extreme emotional distress in the victim, the tort of outrage will not lie. Banks v. Fritsch, 39 S.W.3d 474, 481 (Ky.App.2001) (citing Brewer v. Hillard, 15 S.W.3d 1, 8 (Ky.App. 1999), and Rigazio v. Archdiocese of Louisville, 853 S.W.2d 295, 299 (Ky.App.1993)).

68 S.W.3d 352, 361 (Ky.2001). Here, the authority for Phillips's actions was granted to him via KRS 431.010(31) and KRS 431.005(1), authority which he retains unless his actions strip him of this authority because, *inter alia,* he has violated someone's constituted rights, as clearly established under the law. Prior to the relevant incidents of Smith's claim, the facts of this matter clearly demonstrate Phillips invoked his power to act under color of law (*i.e.,* he informed Smith that he was "a cop"). Although employed at Norton at the time at issue, Phillips was acting in his capacity as a peace officer for the Commonwealth under the color of law, as the law allows him to do, in a "moonlighting" role. His status as a "security officer" for Norton did nothing to diminish or relieve him of his authority, duties and responsibilities as a peace officer vested with the power to act under the color of law. The appellees could not have cloaked Phillips with the authority to act as a peace officer, and accordingly Phillips could not have made an arrest, a *Terry*-type stop, or have otherwise acted under color of law in the course and scope of his *private* employment. His private employment could not have granted him any such peace officer authority; nor, for that matter, could his private employment have been permitted to direct, restrain, or otherwise interfere with Phillips's discretion to exercise his peace officer authority.[8] *See Puckett,* 821 S.W.2d at 795. These actions were within Phillips's role as a peace officer, regardless of his status at the time of a security officer for a private employer. To illustrate this point, had Phillips simply been visiting a friend or family member in the hospital and heard Smith say "What if I had a gun in my purse" or "I have a gun in my purse," as a peace officer, he could

exercise his authority to keep the peace of the Commonwealth under the color of law, the same as he did under the facts of this case. The fact that he was being privately employed on the inside of the hospital does not diminish his ability to keep the peace. Thus, if the appellees could not have equipped Phillips with the authority to act as a peace keeper, they cannot be vicariously liable either wherein Phillips has been shielded by qualified immunity for acting under the color of law.

### 2. Direct liability claims against Norton, Securitas, David Rednour, and Tony Rednour

Smith brought direct claims of negligent hiring and retention against appellees Norton and Securitas which, as noted, the circuit court dismissed. Generally speaking, in order to prevail in claims of this nature an injured party must prove that "(1) the employer knew or reasonably should have known that an employee was unfit for the job for which he was employed, and (2) the employee's placement or retention at that job created an unreasonable risk of harm to the plaintiff." *Ten Broeck Dupont, Inc. v. Brooks,* 283 S.W.3d 705, 733 (Ky.2009)(citing *Oakley v. Flor–Shin, Inc.* 964 S.W.2d 438, 442 (Ky.App. 1998)). Similarly, an employer may be held liable for negligent supervision if he or she knew or had reason to know of the risk that the employment created. *McDonald's Corp. v. Ogborn,* 309 S.W.3d 274, 291 (Ky.App.2009). On appeal, Smith's argument is as follows:

> Here, the Corporate Defendants did not specifically argue for dismissal of these direct liability claims in their Motion for Summary Judgment, and instead chose to focus on the immunity issues discussed above. The reason for this is

---

**8.** As *dicta,* we note that Smith did not join the Louisville Metro Department of Corrections,

Phillips's appointing authority, as a party herein.

clear—regardless of whether the Corporate Defendants are entitled to an immunity defense, Plaintiff may still pursue these direct negligence claims for negligent hiring, training, supervision, and retention against the Corporate Defendants. Summary judgment, therefore, is inappropriate on these claims. Moreover, a review of Mr. Phillips' Metro Corrections employment file reveals a pattern of conduct raising a jury question as to whether he was fit to provide security at a local hospital. Specifically, Mr. Phillips altered and falsified at least one, and perhaps two, off-work statements from a doctor's office in order to cover for time he took off work. For this conduct, Mr. Phillips was cited for Dereliction of Duty and a violation of the Employee Code of Ethics & Conduct. On a separate occasion, Mr. Phillips was cited for significant and repeated absenteeism. Most significantly, though admittedly after the conduct at issue in this case, Mr. Phillips was disciplined for using unreasonable force. Specifically, when confronted with a verbally uncooperative inmate, Mr. Phillips "used a hip toss to take him to the floor". This pattern of disciplinary issues should have, at a minimum, indicated to the Corporate Defendants that he was unfit for the job and that Mr. Phillips' placement and retention created an unreasonable risk of harm. Plaintiff's direct negligence claims against the Corporate Defendants, therefore, should be permitted to proceed.

In sum, Smith argues that (1) Norton and Securitas did not ask the circuit court for summary judgment regarding these claims; and (2) even if they did, it was inappropriately granted because the evidence of record demonstrated genuine issues of material fact existed. In addition, Smith argues (3) with respect to the various tort claims she asserted against Tony Rednour and David Rednour, that she

has not received an "ample opportunity to complete discovery" as required by the Kentucky Supreme Court in *Pendleton Bros. Vending, Inc. v. Commonwealth Finance & Admin. Cabinet*, 758 S.W.2d 24, 29 (Ky.1988); indeed, she has not taken the depositions of either David Rednour or Tony Rednour to determine their involvement. David Rednour has not provided any evidence whatsoever regarding his role in Linda's assault and detention. Tony Rednour has merely provided a self-serving affidavit drafted by his lawyer.

The first part of Smith's argument is a misrepresentation of the record. Below, Securitas, Norton, and David Rednour filed memoranda in support of summary judgment regarding these claims (which actually responded to the very argument Smith has put forth in this appeal).[9] For example, Norton's and David Rednour's joint argument was as follows:

**D. There is No Evidence Or Even An Articulated Basis For The Direct Claims Against Norton Suburban And David Rednour And The y Should Be Dismissed.**

The plaintiff asks the Court not to dismiss her direct negligent training and supervision claim against Norton Suburban even if the claims based on Mr. Phillips's actions and omissions are dismissed based on immunity. Response at 8. However, the plaintiff has not articulated any facts that would support such a claim, nor has she produced any supporting evidence. Instead, the plain-

9. Smith's argument, as it appears above, is the same argument she incorporated into her response brief before the circuit court. Nor-

ton and Securitas responded to it in the manner indicated below in their respective reply briefs.

tiff's complaint sets forth generic language that Norton Suburban was negligent in not "prohibiting" the altercation. Amended Complaint at ¶ 16, and was negligent in hiring, training, supervising, and retaining Mr. Phillips and the other individual defendants. Amended Complaint at ¶ 18. There are absolutely no facts alleged in the complaint that would support such a claim. Further, although extensive written discovery has taken place, the only evidence the plaintiff points to as support for these claims is Mr. Phillips's employment file. She first points to two instances of a possible dispute regarding Mr. Phillips inappropriately taking time off work, which has no bearing on whether Mr. Phillips would act appropriately when faced with a deadly threat. Response at 9. She then points to a document regarding an incident in 2013 in which Mr. Phillips may have used excessive force with an uncooperative inmate. Response at 9, Exhibit B. However, the altercation with the plaintiff occurred in *March 2012*, the preceding year. Thus, there is no way this incident could have put Norton Suburban on notice that it could be negligent to hire or retain Mr. Phillips in 2012. There is simply no evidence or articulated basis for the direct claims asserted against Norton Suburban, and those claims should be dismissed.

Similarly, there is no basis for the claim or claims asserted against David Rednour. The plaintiff claims she needs discovery to support the claim against Mr. Rednour, but the discovery to date conclusively establishes that he cannot be liable to Ms. Smith. She claims "David Rednour has not provided any evidence whatsoever regarding his role in Linda's assault and detention." Response at 11. However, David Rednour has provided written responses to her discovery requests, and *she has not offered any affidavit or testimony to support a claim against David Rednour*. Surely if he was present during the altercation she would have said so by now. She offers no evidence or *even allegation* in the Response, and she does not offer an affidavit to support the claim or to state what she expects discovery will show as to the alleged direct claim against David Rednour. There is a simple explanation for why none of this is offered. They do not exist. Such claims should be dismissed.

Securitas offered a roughly identical argument in favor of summary judgment on these claims.

In short, the first part of Smith's argument has no merit. Smith did not file any kind of post-judgment motion asserting that it was error for the circuit court to dispose of these particular claims in its summary judgment. Moreover, even if she had preserved the matter for review, we find no error in the circuit court's decision to make a ruling on these claims; the viability of these claims was an issue squarely before the circuit court at the time.

As to the second part of Smith's argument, Norton and David Rednour's counter-argument, as it appears above, is an accurate summary of the record and characterization of the evidence. We are well aware that in a summary judgment motion the facts are to be construed favorably to the nonmovant, but here no evidence of record supported any of Smith's direct claims against any individual.

Additionally, the third part of Smith's argument misunderstands the burden of proof in this matter. It was not David and Tony's obligation to prove they were *not* involved in any tortious conduct toward her; rather, it was her obligation to prove they *were*. CR 43.01. Moreover, Smith's

argument that she was somehow denied an opportunity to gather evidence capable of withstanding summary judgment is untenable. As discussed in Norton and David Rednour's joint argument, at any time between January 10, 2013 (the date she initiated this action), and June 24, 2014 (the date it was ultimately dismissed), nothing prevented Smith from creating a genuine issue of material fact regarding their liability by simply filing an affidavit conforming to her complaint (*i.e.*, an affidavit to the effect that David and Tony engaged in tortious conduct that caused her injury).

Thus, as it relates not only to Smith's claims against Norton and Securitas, but also to her separate claims against David and Tony Rednour, we find no error in the circuit court's decision to dismiss.

### 3. Claims against Brooks Security, LLC, and Kelvin Brooks

In her complaint, Smith asserted the same vicarious and direct liability claims against Brooks Security that she asserted against Norton and Securitas and the same claims against Kelvin Brooks that she asserted against Tony and David Rednour. The circuit court dismissed those claims for exactly the same reasons discussed above. Smith's argument on appeal is that it was error for the circuit court to do so because, as the record demonstrates, Brooks Security and Kelvin Brooks never actually moved for summary judgment.

We find no fault in the circuit court's granting of summary judgment under the narrow circumstances of this case. "Generally speaking, Kentucky law strongly discourages *sua sponte* dismissals[.]" *Doster v. Kentucky Parole Board*, 308 S.W.3d 231, 232 (Ky.App.2010). Nevertheless, the circuit court is authorized to grant a summary judgment in favor of a party who has not requested it in the limited and rare situation where a motion for summary judgment has been made by some party to the action, the court has all of the pertinent issues before it at the time the case is submitted, and where overruling the movant's motion for summary judgment necessarily would require a determination that the nonmoving party was entitled to the relief asked. The rationale for not requiring a formal motion for summary judgment under these circumstances is that there is no prejudice to the party against whom summary judgment is granted. *See Storer Communications of Jefferson County, Inc. v. Oldham County Bd. of Educ.*, 850 S.W.2d 340, 342 (Ky.App.1993). Here, the circuit court's summary judgment in favor of Brooks Security and Kelvin Brooks in this matter is the limited and rare situation envisioned by this exception.

### CONCLUSION

Smith has put forth no basis for reversing the circuit court's judgment in this matter. We therefore AFFIRM.

DIXON, JUDGE, CONCURS.

JONES, JUDGE, DISSENTS AND FILES SEPARATE OPINION.

JONES, JUDGE, DISSENTING:

Respectfully, I dissent. I do not believe the fact that peace officers are permitted by statute to "moonlight," the fact that their conduct is regulated while off duty, or the fact that their arrest powers endure while they are off duty are dispositive of the immunity question. In this case, I believe that there are serious issues of fact regarding the capacity in which Officer Phillips was acting at the time of the events in question which preclude summary judgment. While some facts suggest that Officer Phillips may have been acting in his role as a peace officer, others equally suggest that he was wholly acting as a

private security guard, including the fact that Phillips did not arrest Smith or cite her for her conduct that evening.

While the record here contains ample evidence that Phillips, a certified peace officer, was working as a private off-duty security guard when the events underlying this appeal occurred, if and when Phillips's role changed to that of a public peace officer is unclear. "The question of whether an off-duty peace officer is acting within the scope of his authority and therefore entitled to official immunity requires an examination of the officer's conduct and a differentiation of those actions taken in a private capacity from those actions performed as a public servant. The determination of this question presents embedded fact issues that are best left to the trier of fact." *Dillard's, Inc. v. Newman,* 299 S.W.3d 144, 148 (Tex.App.2008); *see also Lovelace v. Anderson,* 366 Md. 690, 785 A.2d 726, 739 (2001). Likewise, I do not believe that a wholly private institution should be able to immunize itself from liability by hiring peace officers to perform its security functions. *White v. Revco Disc. Drug Centers, Inc.,* 33 S.W.3d 713, 726 (Tenn.2000).

For these reasons, I would reverse the Jefferson Circuit Court and remand this matter for additional proceedings, including a factual determination regarding the nature of Officer Phillips's actions (peace officer or private security guard) at the time of the events in question.