RENDERED: AUGUST 25, 2023; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2022-CA-0652-MR

HAL SNOWDEN, JR., D/B/A
ROSEGLADE FARM                                                      APPELLANT


|  | APPEAL FROM JESSAMINE CIRCUIT COURT |
| v. | HONORABLE C. HUNTER DAUGHERTY, JUDGE |
|  | ACTION NO. 17-CI-00158 |


CITY OF WILMORE, KENTUCKY;
BRIAN DENGER, IN HIS OFFICIAL
CAPACITY AS MEMBER OF THE
JESSAMINE COUNTY – CITY OF
WILMORE JOINT PLANNING
COMMISSION; DAVE CARLSTEDT,
IN HIS OFFICIAL CAPACITY AS
MEMBER OF THE JESSAMINE
COUNTY – CITY OF WILMORE
JOINT PLANNING COMMISSION;
DAVID RIEL, IN HIS OFFICIAL
CAPACITY AS MEMBER OF THE
WILMORE, KENTUCKY, CITY
COUNCIL; DENNIS ADAMS, IN HIS
OFFICIAL CAPACITY AS MEMBER
OF THE JESSAMINE COUNTY –
CITY OF WILMORE JOINT
PLANNING COMMISSION; DON
COLLIVER, IN HIS OFFICIAL
CAPACITY AS MEMBER OF THE
JESSAMINE COUNTY – CITY OF
WILMORE JOINT PLANNING

COMMISSION; ERIC ZABILK, IN HIS OFFICIAL CAPACITY AS MEMBER OF THE JESSAMINE COUNTY – CITY OF WILMORE JOINT PLANNING COMMISSION; HAROLD RAINWATER, IN HIS OFFICIAL CAPACITY AS A MEMBER OF THE WILMORE, KENTUCKY, CITY COUNCIL; HAROLD RAINWATER, IN HIS OFFICIAL CAPACITY AS MAYOR OF THE CITY OF WILMORE, KENTUCKY; JAMES MCKINNEY, IN HIS OFFICIAL CAPACITY AS MEMBER OF THE JESSAMINE COUNTY – CITY OF WILMORE JOINT PLANNING COMMISSION; JANE BALL, IN HER OFFICIAL CAPACITY AS MEMBER OF THE JESSAMINE COUNTY – CITY OF WILMORE JOINT PLANNING COMMISSION; JEFF BAIER, IN HIS OFFICIAL CAPACITY AS MEMBER OF THE WILMORE, KENTUCKY, CITY COUNCIL; JESSAMINE COUNTY – CITY OF WILMORE JOINT PLANNING COMMISSION; JIM BRUMFIELD, IN HIS OFFICIAL CAPACITY AS MEMBER OF THE WILMORE, KENTUCKY, CITY COUNCIL; JOHN OSBORNE, IN HIS OFFICIAL CAPACITY AS MEMBER OF THE JESSAMINE COUNTY – CITY OF WILMORE JOINT PLANNING COMMISSION; KIM DEYER, IN HER OFFICIAL CAPACITY AS MEMBER OF THE WILMORE, KENTUCKY, CITY COUNCIL; LEONARD FITCH, IN HIS OFFICIAL CAPACITY AS MEMBER

OF THE WILMORE, KENTUCKY,
CITY COUNCIL; LYNN COOPER, IN
HER OFFICIAL CAPACITY AS
MEMBER OF THE WILMORE,
KENTUCKY, CITY COUNCIL;
MARY JO MORROW, IN HER
OFFICIAL CAPACITY AS MEMBER
OF THE JESSAMINE COUNTY –
CITY OF WILMORE JOINT
PLANNING COMMISSION; AND
PETER BEATY, IN HIS OFFICIAL
CAPACITY AS MEMBER OF THE
JESSAMINE COUNTY – CITY OF
WILMORE JOINT PLANNING
COMMISSION                                                                    APPELLEES


OPINION
AFFIRMING

** ** ** ** **

BEFORE:  DIXON, GOODWINE, AND KAREM, JUDGES.

GOODWINE, JUDGE:  Hal Snowden, Jr. ("Snowden") appeals from orders of the

Jessamine Circuit Court entered on October 28, 2018, November 9, 2018, August

9, 2019, July 20, 2020, September 24, 2020, May 12, 2021, March 22, 2022, and

April 18, 2022.  After careful review, we find no error and affirm.

**BACKGROUND**

          This matter, litigated for nearly three decades, concerns the location

and size of a conservation easement on Snowden's property, Roseglade Farm, in

Wilmore, Kentucky.  The history of this matter includes a 2018 appeal in this

action and two prior appeals to this Court in related actions concerning the

development of Roseglade Farm.[1]  In the 2018 appeal, this Court summarized the

history of this matter as follows:

> Snowden owns a 175-acre parcel of land referred
> to as Roseglade Farm.  The northeast portion of the tract
> lies near the "Y" intersection of U.S. Highway 68 and
> Kentucky Highway 29 in Jessamine County. . . .
>
> In 1997, Snowden submitted an application for a
> zone change for the farm from agricultural to residential.
> A review of the several public hearings conducted as part
> of the zoning process indicates that the matter was hotly
> contested.  Members of the public were most concerned
> that greenspace would be lost across that part of
> Roseglade [F]arm lying between two historic homes on
> the northern part of the farm near the Y-intersection of
> U.S. Highway 68 and Kentucky 29.  However,
> Snowden's preliminary plan for the development of the
> farm explicitly depicted greenspace at this location,
> setting aside slightly more than 100 acres (identified as
> the East Field Permanent Greenspace Area) for continued
> agricultural uses.
>
> In December 1997, the Wilmore City Council
> approved a zone change of the farm from A-1 to R-5 as
> consistent with the Wilmore Comprehensive Plan.  "R-5"
> is designated a rural transition zone.  The local zoning
> ordinance provides that those areas within the City of
> Wilmore zoned as R-5 should function as transition areas
> between the smaller urban lots found in the Wilmore
> community and the five (5) – acre minimum density lots
> found in the agricultural areas of surrounding Jessamine
> County.  In R-5 zones, both agricultural and residential

---

[1] *See Kopser, et al. v. City of Wilmore*, No. 2001-CA-000232-MR (Ky. App. Mar. 1, 2002); *see also Snowden v. City of Wilmore*, 412 S.W.3d 195 (Ky. App. 2013); *see also City of Wilmore v. Snowden*, No. 2017-CA-001345-MR, 2018 WL 4264921 (Ky. App. Sep. 7, 2018).

development are permitted. According to the ordinance, this zone "shall provide a permanent green space/buffer area to the growing areas of Wilmore and allow a compatible transition into the active agricultural areas of the surrounding County." As a condition to development in this zone, "an undeveloped portion of the parent tract . . . will remain in permanent green space."

The town council found that "the proposed zone change and development plan are in agreement with the comprehensive plan as they meet all the criteria of the requirements of an R-5 zoning classification, the goals and objectives and the Wilmore Community Plan." It also found that there "is a present need for residential property as proposed by the applicant. His property provides for and protects a substantial green space along the two abutting highways [the Y-intersection at U.S. Highway 68 and Kentucky Highway 29]."

*Snowden*, 2018 WL 4264921, at *1. In December 1998, Snowden dedicated

approximately 100 acres of the farm to the City of Wilmore ("the City") as a

conservation easement. *Id*. The deed of conservation easement stated, in part,

[t]he property includes a designated area of permanent greenspace, as shown on Exhibit "B" and described in Exhibit "C" attached hereto and incorporated herein by this reference, and such area shall be maintained perpetually subject to the terms and restrictions of this Conservation Easement[.]

*Id.* at *2.[2] The deed further described the conservation easement as containing

"open space of approximately 100 acres of farmland, pastures, and grassland[.]"

*Id.* The easement consisted of "approximately 4,100 feet of frontage along U.S.

---

[2] Neither Exhibit B nor C was attached to the deed, nor did it appear from the record that either had ever been prepared.

Highway 68 . . . and approximately 3,000 feet of frontage along Kentucky Highway 29[.] . . . Furthermore, the [conservation easement] is specifically located at the beginning of the Kentucky Highway 29 scenic entry corridor to the City of Wilmore[.]" *Id.* The deed also describes the Betty Bryan House and Ashbrook House as "immediately adjacent" to the easement. *Id.* The deed states that "the remaining balance" of the property, meaning Roseglade Farm, would be rezoned to R-5 to allow for development. *Id.* at *3.

In 2016, Snowden applied again to the planning commission for a new consideration of a plan to develop Roseglade Farm into 174 residential lots of approximately .25 acres each. This plan for the property reconfigured the preliminary development plan prepared in August 1997 (and approved in December 1997) by inverting the proposed residential area as platted and the greenspace area referred to in the conservation easement. Under Snowden's amended plan, the residential area would now be located on the northeast portion of the farm near the Y-intersection of U.S. Highway 68 and Kentucky 29. The revised preliminary plat and amended development plan indicated that Snowden would grant to the City of Wilmore a substitute conservation easement to include the newly envisioned permanent greenspace areas identified on the revised preliminary plat.

Because the property that Snowden proposed to develop encompassed the conservation easement, the planning commission advised him in writing that it would not approve the amended development plan absent the agreement of the town council to release or modify the easement recorded in January 1999. Snowden represented to the town council that the 1999 conservation easement "will remain totally intact and valid until such time that a new easement for the land

-6-

residual may be established." Nevertheless, through a resolution adopted on January 17, 2017, the town council denied Snowden's request to modify or release the 1999 conservation easement. Snowden sought to void any arguable binding effect of the 1999 conservation/ agreement.

On March 9, 2017, Snowden filed a complaint for declaratory relief in the Jessamine Circuit Court. Snowden contended that he had a continuing right to modify and amend his preliminary development plan for Roseglade Farm subject only to the rules, regulations, and processes of the planning commission and without regard for the conservation easement recorded in 1999. Snowden argued that the portion of the farm that the parties intended to subject to the conservation easement "would and could only be identified with specificity at a future date when the [planning commission] approved 'final construction plans.'" He contended that as a consequence, the easement "obviously fails to sufficiently identify the dimensions and boundaries of the property" and that the physical location of the property that it purported to encumber could not be located with reasonable certainty. In essence, Snowden sought to void any binding effect or continuity of his original conservation easement. The City of Wilmore and members of the town council denied that Snowden was entitled to the relief he sought.

*Id.* at *4. The circuit court granted summary judgment in favor of Snowden, finding the conservation easement facially void and unenforceable because the description of the encumbered property was inadequate. *Id.* at *5. The City of Wilmore appealed.

This Court reversed the summary judgment of the circuit court, holding the description was adequate under KRS[3] Chapter 382, the Uniform Conservation Easement Act. *Snowden* , 2018 WL 4264921, at *5. Specifically, this Court determined

> [d]espite the absence of Exhibits B and C identified in the written easement at the center of this dispute, the dimensions and boundaries of the conservation easement can be physically located with reasonable certainty. Roseglade Farm is bounded by U.S. Highway 68 to the north and Kentucky Highway 29 to the southeast. These highways intersect at a point just northeast of the farm. The description of the encumbered property indicates that it forms a quadrilateral. The location of two of its sides are defined by the location of the two highways bordering the farm; the third side is defined by its intersection with the first two (and is more particularly described as that part of the farm bordering the existing commercial property located at the Y-intersection lying to the northeast); the fourth is, therefore, readily ascertainable. Moreover, the [conservation easement] is described as consisting of approximately 100 acres lying between the Betty Bryan House and the Ashbrook House and "located at the beginning of the Kentucky Highway 29 scenic entry corridor to the City of Wilmore."
>
> Finally, the easement provides that its objective is to comply with the requirements of the R-5 zone calling for a transition area between the City of Wilmore lying to the southwest of the farm and the agricultural areas of Jessamine County lying to its west, north, and south. The dimensions and boundaries of the conservation easement are fairly delineated. Its situs is clear. Consequently, we agree with the [City of Wilmore] that the easement is not

---

[3] Kentucky Revised Statutes.

-8-

void as a matter of law but that it is instead susceptible of enforcement.

*Id.*

After the 2018 appeal, Snowden moved for a declaration of rights, requesting the circuit court determine the location and boundaries of the conservation easement. The circuit court denied Snowden's motion on October 26, 2018. Snowden timely moved to alter, amend, or vacate the order. On November 9, 2018, the circuit court granted Snowden's motion to the extent that it amended the order to remove language making the October 26, 2018 order final and appealable. Over the City's objection, the circuit court also allowed Snowden to amend his complaint to include claims of legislative invalidity, *res judicata*, failure of a condition subsequent, mutual mistake, integration of the agreement, and spoliation of evidence.

Snowden then moved for partial summary judgment on his claim that the conservation easement was legislatively invalid, making it nonbinding and unenforceable. On July 20, 2020, the circuit court denied his motion, finding that under KRS 83A.010, a conservation easement is not an "ordinance." Record ("R") at 515.[4] Snowden again timely moved to vacate the court's order. On September 24, 2020, the court denied the motion but informed the parties it would "consider

---

[4] Citations to the record in this case are to volumes titled "After 1st Appeal."

whether a final plat is required to convey [a] valid easement and whether the law of the case or any other defense, precludes [Snowden] from raising that issue at this time." R. at 617.

After briefing by the parties, the circuit court entered an interlocutory order on May 12, 2021, resolving those issues. The court found that the law of the case doctrine precluded any argument by Snowden regarding the adequacy of the description of the conservation easement, including his argument that a final plat is required for an easement to be valid. The court then scheduled a hearing to determine the exact location of the easement consistent with the 2018 opinion of this Court.

At the hearing, the parties presented evidence on the location of the easement, primarily focusing on the disputed fourth boundary of the quadrilateral referenced in the 2018 opinion. Snowden argued the boundary was the sightline between the Betty Bryan House and Ashbrook House. This would make the easement approximately 40 acres in total. Snowden claimed the City, both in writing and orally, made judicial admissions asserting the boundary was the sightline between the two homes. The City presented testimony from the mayor of the City and the chairman of the Jessamine County/City of Wilmore Joint Planning Commission. It argued the court should rely on Snowden's development plan, presented to the city council in support of his request for the change in zoning in

-10-

1998, to determine the location of the easement. The development plan depicts "permanent greenspace" of approximately 105 acres.

In its March 22, 2022 judgment, the circuit court held, based on the 2018 opinion, there exists no material issue of fact as to the description of the easement. It further determined Snowden asserted no issue of material fact concerning any of his other claims and any legal issues had been resolved by prior orders. On this basis, the court dismissed Snowden's remaining claims. Both parties timely moved to alter, amend, or vacate the judgment because it did not address the location of the easement. Snowden also requested the court vacate the dismissal of his claims because they remained unresolved.

The circuit court amended its judgment on April 18, 2022, identifying the location of the conservation easement based on Snowden's development plan. The court determined an evidentiary hearing was necessary because the easement contained a latent ambiguity requiring consideration of parol evidence to determine the location of the fourth boundary.

The circuit court was unconvinced by Snowden's argument that the City must be bound by its statements that the fourth boundary is the sightline between the two historic homes. The court determined that at no time did the City assert the sightline between the two homes would constitute the entirety of the easement. The court found any statements the City or its counsel made regarding

-11-

the sightline "were clearly inconsistent with the more specific portions of the City's argument[,]" including its repeated assertion that the easement consisted of approximately 100 acres.  R. at 882.

The circuit court found there was "overwhelming evidence" that the parties intended for the location of the easement to be based on Snowden's development plan and that the plan was likely meant to be one of the missing exhibits.  While the sightline between the two historic homes as the fourth side would create an easement of approximately 40 acres, the "permanent greenspace" referenced in the development plan amounts to 105.31 acres.  The plan was also consistent with Snowden's statements to the Planning Commission and city council in 1997, the easement description, and the 2018 opinion of this Court.[5]  The development plan accurately depicted the frontage amounts along U.S. Highway 68 and Kentucky Highway 29 included in the description.  Based on the development plan, the circuit court held

> The legal description of the Conservation Easement
> conveyed by Mr. Snowden to the City of Wilmore shall
> be the area described as the East Field Permanent
> Greenspace Area of 83.10 acres and the West Field
> Permanent Greenspace Area of 22.21 acres for a total of
> 105.31 acres, as shown on [the City's] Exhibit 5 from the

---

[5] Despite Snowden's repeated assertion otherwise, this Court's opinion did not reference the "sightline" between the two homes.  Instead, this Court only described the conservation easement as "consisting of approximately 100 acres lying between the Betty Bryan House and the Ashbrook House."

trial of June 28, 2021, which is incorporated herein by reference.

*Id*. at 886. This appeal followed.

## STANDARD OF REVIEW

Decisions on motions for summary judgment, applications of the law of the case doctrine, and determinations of whether statements are judicial admissions are all reviewed *de novo*. *Martin v. Wallace*, 651 S.W.3d 753, 756 (Ky. 2022) (citation omitted); *University Medical Center, Inc. v. Beglin*, 432 S.W.3d 175, 178 (Ky. App. 2014); *Reece v. Dixie Warehouse and Cartage Co.*, 188 S.W.3d 440, 448 (Ky. App. 2006) (footnote omitted).

## ANALYSIS

On appeal, Snowden argues the circuit court erred in three respects: (1) by applying the law of the case doctrine; (2) by denying his motion for summary judgment because the conservation easement is legislatively invalid; and, (3) by not finding the City's statements regarding the "sightline" between the two historic homes to be judicial admissions. Snowden further argues that this Court, in *Kopser*, No. 2001-CA-000232-MR, determined his development plan was not final or binding upon him.

First, the law of the case is "an iron rule, universally recognized, that an opinion or decision of an appellate court in the same cause is the law of the case for a subsequent trial or appeal[.]" *TECO Mechanical Contractor, Inc. v. Kentucky*

*Labor Cabinet*, 474 S.W.3d 153, 158 (Ky. App. 2014) (citation omitted). Once an issue is decided by an appellate court, it cannot be relitigated. *St. Clair v. Commonwealth*, 455 S.W.3d 869, 887 (Ky. 2015) (citation omitted). The doctrine guards against parties endlessly revisiting previously decided issues so that litigants can be ensured finality of appellate decisions. *Wright v. Carroll*, 452 S.W.3d 127, 130 (Ky. 2014) (citation omitted).

In both the May 12, 2021 interlocutory and March 22, 2022 judgments, the circuit court correctly determined that Snowden was precluded from raising any issue concerning the adequacy of the description in the conservation easement, including his argument regarding whether a final plat is necessary. This Court's 2018 decision determined the description was adequate and that decision cannot now be relitigated.

As to any claim not relating to the adequacy of the description, Snowden was given adequate opportunity to litigate all his claims. Importantly, in the March 22, 2022 judgment, the circuit court did not dismiss Snowden's other claims based on the law of the case but instead determined he had asserted no issue of material fact relating to any of his remaining claims. *See Steelvest, Inc. v. Scansteel Service Center, Inc.*, 807 S.W.2d 476, 480 (Ky. 1991).[6] He was given

---

[6] It appears from the record that the circuit court granted summary judgment on Snowden's claims *sua sponte*. Despite having argued in briefing that Snowden's amended complaint should have been dismissed based on the law of the case doctrine, the City did not formally move for

ample time to complete the discovery. *Blankenship v. Collier*, 302 S.W.3d 665, 668 (Ky. 2010) (citation omitted). The record contains numerous notices of depositions, interrogatories, and requests for the production of documents from Snowden. The record does not reveal any genuine issue of material fact. Furthermore, on appeal, Snowden identifies no such issue. Instead, he focuses the entirety of his argument on the law of the case doctrine. We can only find that the circuit court properly dismissed his claims.

Furthermore, the circuit court properly denied summary judgment on Snowden's claim of legislative invalidity. He claims the conservation easement is void because the City did not comply with the procedure for passing ordinances under KRS 83A.060. In its July 20, 2020 interlocutory order, the circuit court found that acceptance and approval of a conservation easement do not constitute an ordinance under KRS 83A.010(11), meaning that the procedures a city must follow to pass an ordinance do not apply. Snowden again makes no argument contesting the reasoning of the circuit court.

An ordinance is "an official action of a city legislative body, which is a regulation of a general and permanent nature and enforceable as a local law or is an appropriation of money." KRS 83A.010(11). A conservation easement is not

---

summary judgment. Kentucky law discourages *sua sponte* dismissals. *Smith v. Norton Hospitals, Inc.*, 488 S.W.3d 23, 35 (Ky. App. 2016) (citation omitted). However, this issue is not before us.

-15-

an appropriation of money. Although an easement such as the one agreed to by Snowden and the City is an official action and of a permanent nature, it is not "general." Like any easement, a conservation easement is created by and interpreted as a contract. *Vorherr v. Coldiron*, 525 S.W.3d 532, 542 (Ky. App. 2017) (citations omitted); *see also* KRS 382.810(1). As a contract, the easement binds only the parties thereto – Snowden and the City. *See Ping v. Beverly Enterprises, Inc.*, 376 S.W.3d 581, 595 (Ky. 2012). Therefore, it cannot be defined as "general."

The easement also is not "enforceable as a local law" under KRS 83A.065. The City cannot cite, fine, or penalize Snowden for violating the easement. KRS 83A.065(1). A violation would not be a misdemeanor. KRS 83A.065(2). Instead, the circuit court correctly cites section 6 of the easement itself, which lists remedies available to the City. R. at 30-31. Where Snowden has not cited any authority contradicting this analysis, we affirm the circuit court's July 20, 2020 order.

Next, the circuit court appropriately found that the City's statements were not judicial admissions. A judicial admission is "a formal statement concerning a disputed fact, made by a party during a judicial proceeding, that is adverse to that party, and that is deliberate, clear, and uncontradicted[.]" *Turner v. C & R Asphalt, LLC*, 579 S.W.3d 194, 197 (Ky. App. 2019) (citation omitted).

-16-

"The conclusiveness of a judicial admission should be determined in the light of all the conditions and circumstances proven in the case." *Reece*, 188 S.W.3d at 448 (internal quotation marks and footnote omitted). Such admissions must be narrowly construed. *Id.*

Here, Snowden asserts the City made judicial admissions when describing the easement, referring to the "sightline" between the Betty Bryan House and the Ashbrook House. Although these statements were adverse to the City's interests, they do not constitute judicial admissions as to the fourth boundary of the easement. These statements are directly contradicted by the City's constant assertion that the easement consists of approximately 100 acres, which is consistent with the description of the easement and Snowden's development plan. Although imprecise, these statements cannot be considered judicial admissions because they are not uncontradicted.

Finally, Snowden's argument that his development plan is not "binding on him" based on this Court's decision in *Kopser*, No. 2001-CA-000232-MR, is incorrect. In *Kopser*, this Court affirmed an order of the circuit court which held an agreed order between the parties "did not prevent Snowden from proceeding with the typical planning process including seeking modifications or variances from the original preliminary plat as provided by the rules and regulations of the Planning Commission." *Id*. at 4. This Court described the

preliminary plat as "illustrative." *Id*. at 10. Although Snowden and the City were parties to *Kopser*, it is a distinct action from the current matter. *Kopser* originated as a challenge by adjacent property owners to the rezoning sought by Snowden and granted by the city council. Although this Court acknowledged Snowden's right to pursue usual planning procedures through the planning commission, the opinion did not pertain to the conservation easement. Instead, it appears to relate to the housing development Snowden intended to implement on the remainder of the property.[7]

Here, the circuit court did not limit Snowden's ability to pursue changes to his development plan before the planning commission. This action was immediately preceded by Snowden's unsuccessful attempt to do so in 2016. Instead, the court relied upon the plan to determine where the parties intended the conservation easement to be located. It is appropriate to use extrinsic evidence to ascertain the parties' intent where the evidence shows "the circumstances surrounding execution of the contract, the subject matter of the contract, the objects to be accomplished, [or] the conduct of the parties." *Vorherr*, 525 S.W.3d at 543 (citations omitted). The development plan is clear evidence of the parties'

---

[7] Because *Kopser* arose from a separate circuit court action, the record is not before us. However, the opinion of this Court references an agreement among the parties stipulating to various conditions which appear to relate to construction of a subdivision.

intent when the easement was executed. Nothing in *Kopser* precludes the court from relying upon the plan in this manner.

## **CONCLUSION**

Based on the foregoing, the October 28, 2018, November 9, 2018, August 9, 2019, July 20, 2020, September 24, 2020, May 12, 2021, March 22, 2022, and April 18, 2022 orders of the Jessamine Circuit Court are affirmed. Specifically, the circuit court's reliance on Snowden's development plan and the resulting description of the location of the easement contained in its April 18, 2022 amended judgment are affirmed. Furthermore, the court properly dismissed Snowden's remaining claims.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Carl D. Edwards, Jr.
Will E. Messer
Lexington, Kentucky

Christopher M. Clendenen
Lexington, Kentucky

BRIEF FOR APPELLEES CITY OF WILMORE AND JESSAMINE COUNTY/CITY OF WILMORE JOINT PLANNING COMMISSION:

Robert L. Gullette, Jr.
Nicholasville, Kentucky

Henry E. Smith
Nicholasville, Kentucky