Robert L. GREEN, Movant,

v.

BOURBON COUNTY JOINT
PLANNING COMMISSION,
et al., Respondents.

Supreme Court of Kentucky.

April 20, 1982.

Rehearing Denied Sept. 21, 1982.

Buckner Hinkle, Jr., Timothy T. Green, Harbison, Kessinger, Lisle & Bush, Lexington, for movant.

James M. Lovell, County Atty., Paris, Henry C. Prewitt, Bradley, Blanton & Prewitt, Paris, for respondents.

W. Henry Graddy, IV, McCauley & Elam, Versailles, for amicus curiae.

STERNBERG, Justice.

This proceeding challenges the propriety of the Bourbon County Joint Planning Commission in approving a plat dividing a large agricultural farm into small tracts.

T. A. Grissom, doing business as T. A. Grissom, Inc., respondent, caused his 107.91-acre farm to be platted and laid off into 15 tracts ranging in size from 4.25 acres to 20.43 acres. The plat reflects that each of the tracts is subject to utility easements; each has individual access to a 50-foot dead-end road known as Grissom Lane, leading to and exiting on Stewart Pike in Bourbon County, Kentucky; and 14 of the 15 tracts contain five acres or more, while the one remaining tract is only 4.25 acres. On June 6, 1979, Grissom filed a plat of such subdivision with the Commission and sought its approval, and on June 20, 1979, the Commission approved the plat, subject to the following conditions:

a. That Tract 8, the 4.25-acre tract, become a part of the adjoining property owned by W. F. Cook who had expressed his interest in purchasing this parcel;

b. That fire hydrants be installed by Grissom every 1000 feet;

c. That the soil must meet "satisfactory perc tests;"

d. That improvements be made relative to which Grissom and the county will have to agree;

e. That Grissom rebuild Grissom Lane to county specifications for street construction; and

f. That Grissom post a bond in the sum of $65,000 to cover the costs of the improvements.

On July 20, 1979, movant Robert L. Green, who owns agricultural property adjoining the land sought to be subdivided, filed an action in the Bourbon Circuit Court challenging the action of the Commission (KRS 100.347). The Bourbon Circuit Court (1) granted summary judgment against movant and dismissed the action, and (2) subject to the execution by Green of a bond in the sum of $100,000, Grissom was restrained from selling any of the 15 tracts. The Court of Appeals of Kentucky affirmed so much of the judgment of the trial court as dismissed Green's lawsuit; however, it reversed the part of the judgment that granted an injunction. This court granted review on October 27, 1981, and we reverse.

"I. THE COMMISSION'S ACTIONS HEREIN WERE BASED UPON THE APPLICATION OF AN INVALID ZONING ORDINANCE PRESUMPTION."

The Commission is charged with the responsibility of preparing and adopting plans for the development and well-being of Bourbon County, Kentucky, and the formulation of means to implement those plans. *Daviess County v. Snyder*, Ky., 556 S.W.2d 688 (1977). Its authority is statutory (KRS Chap. 100). Strict compliance with the statute is mandatory. *Creative Displays, Inc. v. City of Florence*, Ky., 602 S.W.2d 682 (1980). KRS 100.277 requires that "All sub-

division of land shall receive commission approval," and until such approval is received and entered on the plat, it may not be recorded in the office of the county court clerk.

Dealing with subdivisions, KRS 100.-111(22) provides that any division of a parcel of land involving a new street constitutes a subdivision. However, there is the following exception: "Providing That a division of land for agricultural purposes into lots of parcels of five (5) acres, or more and not involving a new street shall not be deemed a subdivision." Consequently, if Grissom has divided his farm into lots of not less than five acres each for agricultural purposes and there is no new street involved in the subdivision, there is a presumption that the resulting area would not be considered a subdivision. The subdivision plat may then be recorded.

The Bourbon County subdivision regulations pertaining to land use in agricultural zones provide as follows:

"3.22 Agricultural Zone

3.221 Uses Permitted

a) Agricultural activities including agricultural crops, dairying, and the raising of fowls, or animals of any kind and feeding lots. Land in residential lots of five (5) acres or more in agricultural zones shall be presumed devoted to agricultural use.

b) Single-family dwellings occupied by the owner or operator of the farm and such additional single-family dwellings as are necessary for occupancy by the employees of the farm operation. Permanent type buildings (not mobile homes) erected for this purpose and afterwards found to be unnecessary for such purposes may be rented for residential use."

In defining subdivision, Section 1.8 of the Commission's regulations provides:

" 'Subdivision' means the division of a parcel of land into three (3) or more lots or parcels except in a county containing a city of the first, second, or third class, or in an urban county government where a subdivision means the division of a parcel of land into two (2) or more lots or parcels for the purpose, whether immediate or future, of sale, lease, or building development, or if a new street is involved any division of a parcel of land: Providing that *a division for agricultural purposes into lots or parcels of five (5) acres, or more and not involving a new street shall not be deemed a subdivision.* The term includes resubdivision and when appropriate to the context, shall relate to the process of subdivision or to the land subdivided; any division or redivision of land into parcels of less than one acre occurring within twelve (12) months following a division of the same land shall be deemed a subdivision within the meaning of this section." (Emphasis added)

The record reflects that the Grissom land, prior to it being divided, and other land adjacent thereto were zoned for agricultural use. It is Green's position that Grissom is attempting to create a residential subdivision without complying with the planning and zoning requirements, but merely by having the small tracts take on the statutory and ordinance presumption of being agricultural.

## "A. THE ORDINANCE PRESUMPTION IS VIOLATIVE OF THE STATE ZONING STATUTES."

Green charges that the presumption of agricultural use for tracts of five acres or more clearly violates the statutory scheme for planning and zoning (KRS Chap. 100). We must bear in mind that "planning" and "zoning" are not synonymous. "Zoning" is concerned chiefly with land use; whereas, "planning" has to do with the systematic and orderly development of a community. The Commission may, without cavil, adopt a comprehensive plan and zoning regulations. In the subject action, Grissom sought to secure the approval of his subdivision plat in order that it may be recorded in the county court clerk's office and the 15 tracts sold off without considering any economical, technical, social or physical advancements or changes as required by KRS 100.197. The subdivision as proposed by Grissom in effect constitutes a

change in the land use from agricultural to residential. KRS 100.111(22) provides that such division of agricultural lands (1) into tracts of five acres or more, and (2) not involving a new street, shall not be deemed a subdivision. On the other hand, the ordinance, in addition to reiterating this statute, provides that such lots of five acres or more in an agricultural zone shall be presumed to be devoted to agricultural use. This presumption is not a natural or logical extension of KRS 100.111(22). We find that the presumption of agricultural use as contained in Section 3.221 of the ordinance is in conflict with the provisions of KRS Chapter 100 dealing with the subdivision of land and the designation of land use. Consequently, it is invalid.

## "B.  THE ORDINANCE PRESUMPTION IS INVALID ON ITS FACE."

A legislative body has authority to prescribe that a certain state of facts shall constitute a presumption of agricultural use. The prescribed facts necessary to bring into being the presumption however must have a reasonable relation to the orderly development of a community. In the instant case, the uninhibited division of farm land into five-acre tracts, as herein sought, circumvents and emasculates rather than promotes the orderly development of a community by established planning and zoning requirements.

## "II.  THE LOWER COURTS HAVE OVERLOOKED MATERIAL FACTS INDICATING THAT THE COMMISSION'S ACTIONS IN APPROVING GRISSOM'S PLAT WERE ARBITRARY AND CAPRICIOUS."

■ Green argues in support of this issue that the evidence before the Commission was so minimal that to grant approval of the plat constitutes arbitrary and capricious action. We concur.

We must not lose sight of the fact that the present action is only to secure the approval of a plat so that it may be recorded in the office of the county court clerk. The Commission found that the evidence

before it was sufficient to meet the standards prescribed by the Bourbon County land use permit for agricultural zones. Irrespective of the invalidity of the ordinance, the plat submitted to the Commission and the details displayed thereon were sufficient in and of themselves to disclose that the subdivision, and each individual lot thereof, in truth and in fact, was for residential, not agricultural purposes. The action of the Commission, acting on the evidence before it, in approving the plat is not supported by substantial evidence. It did thus act arbitrarily.

## "III.  THE TRIAL COURT IMPROPERLY GRANTED A SUMMARY JUDGMENT TO THE APPELLEES.

### A.  APPELLEES DID NOT MOVE THE TRIAL COURT FOR A SUMMARY JUDGMENT."

On August 29, 1979, Green filed a motion for a summary judgment in the Bourbon Circuit Court. No such motion was filed by any of the respondents. After having heard arguments of counsel and having considered the law in light of the briefs filed with the court by the respective parties, the trial judge, on December 14, 1979, filed a "Statement of Facts" and an "Opinion" and a "Judgment and Order."

■ In considering the present issue, we limit our discussion and finding to the narrow issue of whether a trial judge is authorized to grant a summary judgment in favor of a party who had not requested it. We are of the opinion that *Collins v. Duff,* Ky., 283 S.W.2d 179, 183 (1955), is dispositive of this issue. In *Collins* we wrote:

"Collins raises some procedural objections to the judgment of the Perry Circuit Court. He maintains that, since the Duffs, as plaintiffs, did not themselves move for a summary judgment, but merely opposed his motion for such judgment, the court could not enter summary judgment for the plaintiffs. We do not agree. It is our opinion that in this kind of situation, where overruling the defendant's motion for summary judgment nec-

essarily would require a determination that the plaintiffs were entitled to the relief asked, a motion for summary judgment by the plaintiffs would have been a useless formality. See *Hennessey v. Federal Security Administrator*, D.C., 88 F.Supp. 664; *Hooker v. New York Life Ins. Co.*, D.C., 66 F.Supp. 313; 3 Moore's Federal Practice, 1st Ed., sec. 56.02, p. 3183."

A trial judge having all of the pertinent issues before him at the time a case is submitted and considered by him on a motion for summary judgment would be justified in considering the propriety of a summary judgment under such conditions to a party who had not sought it. However, in the subject action, as is hereinafter shown, the trial judge acted erroneously in granting summary judgment.

"B. THERE ARE ALSO GENUINE ISSUES OF MATERIAL FACT PRESENT AND UNCONSIDERED BY THE TRIAL COURT."

■ CR 56.03 provides that "The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, stipulations, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Summary judgment procedure is designed to expedite the disposition of cases and avoid unnecessary trials when no genuine issues of fact are raised. *Dossett v. New York Mining and Manufacturing Co.*, Ky., 451 S.W.2d 843 (1970). The trial court must examine the evidentiary material, not in order to decide any issue of fact but only to determine if a real issue does exist. It is not necessary that there must be many genuine issues of fact; it is sufficient to deny the granting of a summary judgment even though the genuine issue of a material fact may be small. *Simpson v. Graves*, Ky., 451 S.W.2d 399 (1970).

■ A review of the record in the subject action discloses that there are many genuine issues of fact and that the trial judge erred in granting a summary judgment dismissing Green's complaint. Without in any way limiting the parties as to the character, extent or nature of the evidence that may be presented, we note that (1) was there a new street involved in the division; (2) were all of the lots five acres or more; and (3) was the division of land for agricultural purposes?

"IV. THE COURT OF APPEALS MISCONCEIVED THE PROCEDURE FOR THE TAKING OF AN APPEAL FROM AN ACTION BY A PLANNING COMMISSION.

A. THERE IS NO INCONSISTENCY BETWEEN KRS SEC. 100.347 AND THE CIVIL RULES OF PROCEDURE.

B. ANY DEFENSE OF INSUFFICIENT PROCESS HAS BEEN WAIVED BY THE APPELLEES.

C. ANY PERCEIVED INSUFFICIENCY OF PROCESS HAS NOT PREJUDICED THE RIGHTS OF ANY PARTY TO THIS ACTION."

These issues are so interrelated that we will consider and dispose of them collectively.

■ The "Complaint and Appeal" which formulates the subject of these issues names the Bourbon County Joint Planning Commission as a defendant as well as naming each member of the Commission individually as a defendant. Summons was issued for and served on each member of the Commission. No summons, however, was issued for the Commission in its official capacity. On August 9, 1979, the Commission and each member thereof filed a joint answer to the "Complaint and Appeal." This answer sought to uphold the action of the Commission and also put in issue the charge of arbitrariness and capriciousness. The subject action is twofold: (1) it is a direct appeal from the action of the Commission, and (2) it is an original action charging abuse of discretion and arbitrariness. Only the propriety of the appeal to

the circuit court has been challenged. The Court of Appeals of Kentucky held that a failure to have a summons issued for the Commission was fatal to the appeal. We do not construe the failure to have summons issued for the Commission so narrowly.

KRS 100.347 provides:

"Appeals from commission or board of adjustment.—Any appeal from commission action may be taken in the following manner:

(1) Any person or entity claiming to be injured or aggrieved by any final action of the planning commission or board of adjustments may appeal from the action to the circuit court of the county in which the land lies. Such appeal shall be taken within thirty (30) days after the final action of the commission or board. Final action shall not include commission's recommendations made to other governmental bodies.

(2) All appeals shall be taken in the appropriate circuit court within thirty (30) days after the action or decision of the planning commission or board of adjustments and all decisions which have not been appealed within thirty (30) days shall become final. *After the appeal is taken the procedure shall be governed by the Rules of Civil Procedure. When an appeal has been filed, the clerk of the circuit court shall issue a summons to all parties, including the planning commission in all cases, and shall cause it to be delivered for service as in any other law action.*" (Emphasis added).

In *Board of Adjustments of City of Richmond v. Flood,* Ky., 581 S.W.2d 1, 2 (1979), this court wrote:

"There is no appeal to the courts from an action of an administrative agency as a matter of right. When grace to appeal is granted by statute, a strict compliance with its terms is required. Where the conditions for the exercise of power by a court are not met, the judicial power is not lawfully invoked. That is to say, that the court lacks jurisdiction or has no right to decide the controversy. *Kentucky Utilities Co. v. Farmers Rural Electric Cooperative Corporation,* Ky., 361 S.W.2d 300 (1962); *Roberts v. Watts,* Ky., 258 S.W.2d 513 (1953)."

The question is should the "Complaint and Appeal" be considered filed even though no summons issued. "The civil rules do not apply in this type of litigation until after the appeal has been perfected." *Board of Adjustments of City of Richmond v. Flood,* supra, at page 2. The irony of this issue is that a summons may not be issued until after the appeal is filed; consequently, the issuance of a summons cannot under the statute constitute an essential element in the filing of the appeal. It is a condition subsequent to the filing; it is procedural and not jurisdictional. However much the Rules of Civil Procedure deal with civil appeals, we are not at liberty to consider them for guidance in determining when the appeal, insofar as it affects the Commission, should be considered filed. Our answer to this issue must therefore come from some other source.

In 1 C.J.S. Actions, Sec. 129, it is written: "An action may be commenced without the issuance of the original process, where defendant voluntarily appears and makes a defense; but such appearance has no retrospective effect." In 62 Am.Jur.2d Process, Sec. 157, it is written: "A defendant may set up in abatement of the action against him a defense raising a question of the jurisdiction of the court for want of sufficient process, irregularity in service, or the like, if he does so before making a general appearance." It has long been held by this court that any objection which might have been urged to a process is waived by pleading to the merits. *Withers v. Reed,* 7 Ky. 258, 4 Bibb 258 (1815).

We are of the opinion that the salutary purpose of having a summons issued and served on the Commission has been fully satisfied by its action in extensively participating in this litigation. In other words, the Commission has entered its appearance and waived the service of summons.

So much of the decision of the Court of Appeals as affirms the action of the Bourbon Circuit Court in dismissing Green's

"Complaint and Appeal" is reversed; so much thereof as denies an injunction is affirmed. The judgment of the Bourbon Circuit Court in granting a summary judgment in favor of Grissom and dismissing Green's "Complaint and Appeal" is reversed. This action is remanded to the Bourbon Circuit Court for further proceedings in keeping with this opinion.

All concur except O'HARA, J., who did not vote as he did not participate in the argument nor the conference.