**STORER COMMUNICATIONS OF JEFFERSON COUNTY, INC.,**
Appellant,

v.

**OLDHAM COUNTY BOARD OF EDU-CATION; W. Lewis Reynolds; Robert Greenwood; Betty Largen; Dennis Clark; Ben Estes; and Chris Gorman, Attorney General of Kentucky, Appellees.**

No. 92–CA–898–MR.

Court of Appeals of Kentucky.

April 2, 1993.

Frank F. Chuppe, Thomas J. Luber, Wyatt, Tarrant & Combs, Louisville, for appellant.

Chris Gorman, Atty. Gen., Thomas John Hellmann, Asst. Atty. Gen., Civ. Div., Frankfort, for appellee, Atty. Gen.

J. Gary Bale, Robert L. Chenoweth, Chenoweth Law Office, Frankfort, John C. Fogle, Mt. Sterling, for all other appellees.

Before HUDDLESTON, McDONALD and SCHRODER, JJ.

McDONALD, Judge.

The issue presented in this case is whether the trial court violated the appellant's due process rights by ruling on the merits of the controversy, *sua sponte.*

On October 24, 1990, the appellant, Storer Communications of Jefferson County, Inc., filed this action in the Oldham Circuit Court alleging the gross receipts utilities tax imposed on it by the appellee, Oldham County Board of Education, violated its rights under both our federal and state constitutions. It sought a declaratory judgment that the tax was void by reason of the First and Fourteenth Amendments to the U.S. Constitution and Sections 1(4), 2, 8, 59(15) and 171 of the Kentucky Constitution. It also sought relief under 42 U.S.C. § 1983, and asked for attorney's fees. After a motion to dismiss by the appellee board based on lack of subject-matter jurisdiction was overruled, the board filed its answer on January 30, 1991. In February the Attorney General was allowed to intervene to defend the constitutionality of KRS 160.593[1] and

---

1. KRS 160.593. Levy of occupational license tax, utility gross receipts license tax, or excise tax for schools.—(1) Any board of education of a school district may, after compliance with the public hearing requirement contained in KRS 160.603, levy school taxes authorized by KRS

160.614,[2] those parts of the Kentucky Education Reform Act (KERA) passed in 1990, which authorize the tax. His answer was filed on March 10, 1991. In June the appellee board moved pursuant to CR 13.07 for leave to file a cross-claim against the Attorney General in his official capacity and to implead and join as parties several others including the Speaker of the House of Representatives, the President of the Senate, the Legislative Research Commission and the Office of Education Accountability. Responses to these motions were filed by the Attorney General and the appellant cable company.

█ Nothing happened of record in this case from late July, 1991, until March 3, 1992, when the Oldham Circuit Court entered the order at issue in this appeal. It overruled the board's motions and, without notice to any of the parties, without a motion for dismissal by any party, without briefs or arguments on the issues, the trial court entered an order granting its judgment for the appellees on the merits! It relied on *Leathers v. Medlock*, 499 U.S. ——, 111 S.Ct. 1438, 113 L.Ed.2d 494 (1991), in deciding the claims raised concerning federal constitutional protections and found, "There is no evidence the cable services were specifically targeted with the intent to interfere with First Amendment activities or rights." It further decided, without discussion, that none of appellant's state constitutional rights had been violated and that Storer was not entitled to relief under 42 U.S.C. § 1983.

Storer Communications filed two motions, one asking the court to disqualify itself pursuant to KRS 26A.015 and the other pursuant to CR 59, requesting the court to vacate the judgment on the grounds it was denied procedural due process. Storer relied on *Gall v. Scroggy*, Ky.App., 725 S.W.2d 867 (1987), and its holding setting forth minimal procedural

due process requirements before the entry of *sua sponte* orders of dismissal. At the hearing on the motions the judge explained that he could have proceeded under CR 77.02(2),[3] but believed he was justified in reaching the merits of the controversy. In the order entered April 3, 1992, the court concluded that KRS 418.040 authorized it to "properly consider the issue presented in the legal sense only." It reaffirmed its prior ruling on the merits of the controversy and overruled the motion for recusal.

In this appeal Storer Communications repeats its argument that it was deprived of due process by the *sua sponte* dismissal of all its claims. In *Gall v. Scroggy, supra,* we discussed the policy reasons which dictate against a court dismissing a complaint without a motion or notice of such intent. Most significant to us was the loss, or the appearance thereof, of the court's detachment and its assumption of an adversarial role. *Id.* at 869. We clearly attempted to discourage *sua sponte* dismissals under CR 12.02 in *Gall,* and provided a list of "minimal procedures" "in order to ensure due process" as follows:

(1) allow service of the complaint upon the defendant; (2) notify all parties of its intent to dismiss the complaint; (3) give the plaintiff a chance to either amend his complaint or respond to the reasons stated by the district court in its notice of intended *sua sponte* dismissal; (4) give the defendant a chance to respond or file an answer or motions; and (5) if the claim is dismissed, state its reasons for the dismissal.

725 S.W.2d at 869, citing *Tingler v. Marshall,* 716 F.2d 1109 (6th Cir.1983).

The plaintiffs in *Gall* were prison inmates whose complaint was dismissed for failure to state a claim prior to the filing of any answer. To lessen its impact on the issue before us, the appellees attempt to

---

160.593 to 160.597, 160.601 to 160.633 and 160.-635 to 160.648. . . .

**2.** KRS 160.614. Tax on gross receipts from furnishing of cable television services.—(1) A utility gross receipts license tax initially levied by a school district board of education on or after July 13, 1990, shall be levied on the gross re-

ceipts derived from the furnishing of cable television services in addition to the gross receipts derived from the furnishing of the services enumerated in KRS 160.613.

**3.** Commonly known as the "housekeeping" rule.

distinguish *Gall* on the basis that answers were filed in this case. The appellant calls this a "distinction without a difference." We agree. The procedural protections afforded litigants in our courts and discussed in *Gall* extend to corporations represented by law firms as well as to *pro se* prison inmates and apply at all stages of a case. We agree with the second distinction the appellees draw: the trial court's dismissal was in the nature of a summary judgment and not a judgment on the pleadings pursuant to CR 12. We fail, however, to see how this distinction helps the appellees' position. Like CR 12, motions under CR 56 must be served on non-moving parties, who are given time to respond, and a hearing is required. CR 56.03.

None of these procedures were afforded the appellant. The appellees cite us to *Green v. Bourbon County Joint Planning Commission*, Ky., 637 S.W.2d 626 (1982), which, relying on *Collins v. Duff*, Ky., 283 S.W.2d 179 (1955), holds that a "trial judge is authorized to grant a summary judgment in favor of a party who has not requested it." While it is true that these cases and others allow a trial court to grant summary judgment to one who has not asked for such relief, this authority is limited to those situations where a motion for summary judgment has been made by some party to the action, the judge has "all of the pertinent issues before him at the time the case is submitted," *Green, supra* at 630, and "where overruling the [movant's] motion for summary judgment *necessarily would require* a determination that the [non-moving party was] entitled to the relief asked." *Collins, supra* at 183. (Emphasis added). Obviously the rationale for not requiring a formal motion for summary judgment in these limited situations is that there is no prejudice to the party against whom summary judgment is granted.

Appellees cite us to no authority that allows a trial court to circumvent the civil rules and enter summary judgment *sua sponte* where the legal issues have not been submitted for determination. While a court might be justified in using its inherent powers to dismiss *sua sponte* for lack of subject matter jurisdiction, it is funda-mental that a trial court has no authority to otherwise dismiss claims without a motion, proper notice and a meaningful opportunity to be heard. CR 56.01 and CR 56.02 clearly provide that a "party" may seek a summary judgment. The rules do not contemplate such a proceeding on the court's own motion. CR 56.03 provides that one will have a minimum of ten days to respond to such a motion. This requirement is mandatory unless waived. *See Equitable Coal Sales, Inc. v. Duncan Machinery Movers, Inc.*, Ky.App., 649 S.W.2d 415 (1983), (seven days notice not objected to and no prejudice shown by fewer days). Even if it is appropriate for the trial court to enter a summary judgment on its own motion, the trial court's failure to afford the appellant the most basic procedural protections, notice of its intention and an opportunity to respond, is unjustifiable, constitutionally defective, and requires reversal.

■ The appellees further argue that Storer's use of CR 59 cured the procedural defects and that appellant could no longer "argue the applicability of *Gall*." It is axiomatic that the fact that one has post-judgment remedies does not obviate the procedural due-process requirements afforded before judgment. *Gall v. Scroggy, supra*.

Finally, the appellees concede that the *Leathers* case does not dispose of appellant's equal protection argument or its state constitutional claims. Even if the trial court had not erred in the process employed, another problem for this reviewing Court is the lack of legal analysis of its decision concerning these claims. Although the appellees suggest we reach the merits of the controversy, ostensibly because the issues are ones "deserving of expeditious resolution," the case is not in the proper posture for such examination at the appellate level for the reasons discussed *infra*. If the appellees were truly concerned about the "spirit and purpose of the Declaratory Judgment Act," they would have joined in appellant's motion to vacate the prematurely granted judgment to prevent the time necessary to appeal

what is an obviously defective judgment. Despite the contention of the appellees and the sincerely held belief of the trial court, there is nothing in KRS 418.040 [4] suggesting that our courts dispense with the minimal requisites of due process. In any event, we make no comment on the merits of the constitutionality of the statutes at issue and will not until the trial court has, after hearing evidence and arguments, rendered a new judgment upon remand.

■ Finally, the appellant argues the trial court erred in declining to recuse itself. It relies on KRS 26A.015(2) which provides:

(2) Any justice or judge of the Court of Justice or master commissioner shall disqualify himself in any proceeding:

(a) where he ... has expressed an opinion concerning the merits of the proceeding.

Unquestionably the trial judge expressed an opinion on the merits prior to any hearing thereon. However misguided the trial court was in its belief that it was acting in conformity with the Declaratory Judgment Act, we agree with the appellees that there is no reason to believe the court's decision was based on any bias or animosity towards the appellant or its claims. Even Storer agrees the trial judge was not personally biased against it. We have the utmost confidence that on remand the trial court will listen to the evidence with an impartial ear, consider all the legal authorities advanced and, regardless of its prior judgment, will afford the parties a fair hearing, which happens to be a tradition with this particular trial judge.

All concur.

---

**4.** This statute provides: "In any action in a court of record of this commonwealth having general jurisdiction wherein it is made to appear that an actual controversy exists, the plaintiff may ask for a declaration of rights, either alone or with other relief; and the court may make a binding declaration of rights, whether or not consequential relief is or could be asked."