RENDERED:  OCTOBER 23, 2020; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2018-CA-1053-MR

DANIEL POPA; BLUETONE
CONNECT, PTY LTD (AUSTRALIA);
PULSE TELECOM PTY, LTD
(AUSTRALIA); NECC TELECOM,
INC.; NECC TELECOM, INC.
(CANADA); PULSE TELECOM, INC.
(CANADA); QUICKCALL.COM, LLC
D/B/A BLUETONE, LLC; AND SRVR,
LLC                                                                                         APPELLANTS


APPEAL FROM JEFFERSON CIRCUIT COURT
v.        HONORABLE CHARLES L. CUNNINGHAM, JR., JUDGE
ACTION NO. 13-CI-002337


LUCIA TIBERIA POPA; RAMONA
CEAN; RAUL TURCU; SHERBAN
APOSTOLINA; AND VICENT
PETRESCU                                                                                  APPELLEES


OPINION
AFFIRMING IN PART,
VACATING IN PART,
AND REMANDING

** ** ** ** **

BEFORE:  COMBS, DIXON, AND MAZE, JUDGES.

COMBS, JUDGE: NECC Telecom, Inc. (Canada); NECC Telecom, Inc.; Pulse Telecom, Inc. (Canada); Pulse Telecom PTY, LTD (Australia); SRVR, LLC; Quickcall.com, LLC d/b/a Bluetone, LLC; and Bluetone Connect, PTY, LTD (Australia) (referred to collectively as "the Transfer Companies"), and Daniel Popa appeal several orders of the Jefferson Circuit Court entered as follows: on February 8, 2017; on February 2, 2018; on February 5, 2018; on May 3, 2018; and an order entered on July 9, 2018, which denied the motion to alter, amend, or vacate the final and appealable order of May 3, 2018. After careful review of the record and the applicable law, we affirm in part, vacate in part, and remand for further proceedings.

This matter has been litigated for many years at every level of our court system. In one of its most recent iterations, the Supreme Court of Kentucky affirmed our dismissal of Daniel Popa's petition for a writ of mandamus as moot. In its opinion, the Supreme Court provided the following summary of the factual and procedural history of the proceedings underlying this appeal:

> Daniel Popa (Daniel) and Lucia Popa (Lucia), a married couple, operated several telecommunications businesses together. In 2010, their marriage was dissolved, and the ownership and control of the companies was divided between the two individuals, presumably because a lack of liquidity precluded having one individual "buy-out" the other. On May 3, 2013, Daniel filed a Complaint against Lucia, alleging that one of the companies she controlled was not providing his companies with software and support they needed, contrary to a

commitment she made in the parties' marital settlement. Daniel named Lucia, her associates who were managing the companies, and several of the companies (Lucia and the companies), as defendants in the Jefferson Circuit Court action. The Complaint also named companies NECC US, SRVR, NECC Canada and Pulse Australia as defendants. Lucia was a 51% majority shareholder in three of the named companies. Lucia and the companies retained attorneys Alan Linker and Paul Hershberg to represent the interests of Lucia and the named companies in the litigation.

After two years of active litigation, it became clear that the only viable solution was for one party to take complete control and pay the other for his/her interests in the companies. In September 2015, nearly two and a half years after the Complaint was filed, the parties entered a 79-page Settlement Agreement which gave Daniel full control and ownership of the companies in exchange for making $3.58 million in payments to Lucia over roughly three years. Daniel also purchased all of Lucia's ownership interest in three additional companies - SRVR, Quickcall/Bluetone, and Bluetone Australia (the Transfer Companies). In the Settlement Agreement, Lucia warranted that the financial statements delivered to Daniel fairly and accurately represented the financial condition and operations of the Transfer Companies.

In 2016, Daniel learned that, during Lucia's ownership and exclusive control of the companies, the companies incurred approximately $8 million in unpaid tax liabilities. On February 16, 2017, Daniel filed a Second Amended Complaint, alleging, among other things, breach of contract, fraud, and negligent misrepresentation. Around the same time, Daniel sought to formally realign the parties, naming all companies involved in this litigation as plaintiffs, and leaving Lucia and her associates as the only defendants.

> Shortly before formally realigning the parties in the litigation, Daniel filed a motion to disqualify attorneys Linker and Hershberg. Since the companies were now completely owned by Daniel, and Linker and Hershberg previously represented some of the companies when the initial Complaint was filed, Daniel alleged an actual conflict under Kentucky Supreme Court Rule (SCR) 3.130(1.9). Daniel argued that because Linker and Hershberg were still representing Lucia in the litigation, the attorneys could use confidential information they obtained through their representation of the companies in a way which was adverse to the interest of those companies - companies now aligned with Daniel as plaintiffs.

*Popa v. Cunningham Popa*, No. 2018-SC-000399-MR, 2019 WL 2462307, at *1-2 (Ky. Jun. 13, 2019).

Pursuant to provisions of the parties' Settlement Agreement, the circuit court apparently was vested with authority to resolve disputes that might arise with respect to it throughout the term of the payments. To this end, the court appointed a telecommunications attorney, Allison Rule, a neutral expert, whose role it was to investigate and "to offer a qualitative assessment with regard to whether the Transfer Companies' telecommunications tax issues were real and severe. . . ." Findings of Fact, Conclusions of Law, and Order and Judgment entered May 3, 2018, at 5. Rule determined that "a significant underpayment/nonpayment situation existed . . . potentially a seven-figure problem." Order entered February 2, 2018, at 3. After the scope of the problem was confirmed, the circuit court ordered Lucia's attorney to stop distributing

-4-

Daniel's installment payments to Lucia. Those funds had been accumulating in an escrow account until Daniel stopped forwarding the installments altogether because of his contention that Lucia had materially breached the terms of the Settlement Agreement.

Meanwhile, Lucia filed a motion on December 8, 2017, to enjoin Daniel from re-routing customers from one of the Transfer Companies (NECC) to a business that he controlled but operated outside the jurisdiction of the court (Apelo). She also sought relief under the provisions of Kentucky's Voidable Transactions Act, KRS[1] 378A.005, *et seq.* Lucia indicated that she feared that Daniel was allowing the Transfer Companies to become insolvent before she was paid the full purchase price of the Transfer Companies.

The circuit court conducted a hearing on a temporary injunction on January 29, 2018. Although the hearing was held to take proof on Lucia's pending motion, it was conducted off the record. With respect to that off-the-record conduct, the Supreme Court of Kentucky observed that a pattern had emerged in the course of the proceedings:

> In the early stages of this litigation, the parties requested that much of the filings and discussions regarding the failure to pay taxes, a large underlying issue in the case, be kept off the record in order to avoid providing insider information to competitors and to not impair the companies' ability to resolve the problem.

---

[1] Kentucky Revised Statutes.

> Unfortunately, the trial court obliged but it later
> recognized that this was improper and declined to
> continue the practice.

*Popa*, 2019 WL 2462307, at *2 n.4.

In an order entered on February 2, 2018, the court noted Rule's testimony at the injunction hearing that during the time Lucia had been in control of the Transfer Companies, the taxes and fees collected from telecommunications customers were not forwarded to taxing authorities. She stated that the problem persisted after Daniel took control of the companies and that the companies continued to fail to meet their tax obligations.

Daniel also testified. According to the circuit court, Daniel acknowledged that NECC was winding up business and that its customers were being advised to transfer their accounts to a new company, Apelo. He admitted that the Transfer Companies were not meeting state and federal tax obligations.

Lucia was also scheduled to testify, but the hearing was adjourned for the day. The following morning, the circuit court announced that after considering the matter overnight, it had decided to enforce the terms of the Settlement Agreement. It concluded that there had been no material breach of the Settlement Agreement because the failure of Lucia and her associates to disclose the tax liabilities of the Transfer Companies was simply immaterial to Daniel. The court indicated that "there's really nothing for us to discuss" and that "bottom line is, I'm

-6-

done talking about all of this." The court released Allison Rule and terminated the proceedings. However, it did not make a ruling on the pending motion for a temporary injunction filed by Lucia and her associates.

The court memorialized its oral remarks in an order entered on February 2, 2018, determining: (1) that all further proceedings would be conducted on the record; and (2) that Daniel could not prove -- as a matter of law -- that Lucia breached the Settlement Agreement because his actions indicated that the Transfer Companies' timely payment of taxes was **not** a material fact upon which he had relied at the time the Settlement Agreement was executed. *See Popa v. Popa*, No. 2019-SC-000115-1, 2019 WL 4072977, at *2 (Ky. Aug. 29, 2019).

In clear and unequivocal language in the order of February 2, 2018, the court emphasized its reliance on the equitable doctrine of "unclean hands" on Daniel's part (*i.e.*, the ongoing failure to pay taxes on the various businesses) as a basis for denying him the relief he sought.

> There is a second, and perhaps more readily grasped, reason the court can no longer entertain a motion to essentially declare the September, 2015, agreement breached. Daniel's acknowledgment that he is not paying the taxes the businesses owe as they come due presents a fundamental problem with any effort to relieve him of an obligation to pay for those businesses because his seller did not do so either. The common law has long had a doctrine, and it has been adopted in Kentucky, that one seeking an equitable remedy (*i.e.*, relief from a financial obligation) must come into court with clean hands. *Time Finance Co. v. Varney*, 253 S.W.2d 233

(Ky. 1953). The courts withhold their aid from those who transgress the law in and about a matter regarding which redress is sought. *Munn v. Munn*, 291 S.W.2d 560 (Ky. 1956).

In the context of this case, Daniel has "unclean" hands. He asks the court to alleviate his obligation to complete his payment for the businesses (or, more precisely, to place its stamp of approval on his decision to not complete the payment). But his basis for doing so – Lucia's alleged failure to pay taxes owed – is behavior manifested with equal or possibly greater impact by his own conduct since taking the reins. The Court must therefore withhold its aid.

Order entered February 2, 2018, at 7-8.

Consequently, the court ordered that the escrowed funds be released to Lucia and that the balance owed on the purchase price of the Transfer Companies be paid. The court advised the parties that they might ask for the court's assistance "[i]f there is disagreement on this rather simple math. Otherwise, the Court will expect this matter to progress to a conclusion in a businesslike manner without the need for further Court assistance." Order entered February 2, 2018, at 8. Furthermore, the circuit court advised Daniel's counsel "to be cautious in deciding whether to file [a motion to reconsider]." *Id.* It instructed that "*any such motion must include a list of all* [*taxing authorities*]*, with contact information, for all of the transferred companies.*" *Id.* at 9 (emphasis original). It warned that if counsel filed a motion asserting that Daniel has a right to proceed, it

would consider sanctions pursuant to the provisions of CR[2] 11.  Comparing Daniel's operation of the Transfer Companies to a "bust-out" scheme, the court warned that "an attorney [] assisting a client in such a scheme" must be reported to the bar association.

In a separate order, the circuit court reiterated its earlier determination that disqualification of Lucia's attorneys was not warranted.  The court found that Daniel had not shown an actual conflict of interest and that it would be inequitable to remove Linker and Hershberg from the representation.  These orders were interlocutory because the other claims asserted by Daniel and the Transfer Companies against Lucia and her associates remained outstanding.

On February 15, 2018, Daniel and the Transfer Companies filed a petition for a writ of mandamus and a writ of prohibition in this Court.  They asserted that the circuit court's summary judgment, *sua sponte*, in favor of Lucia and her associates had been entered without due process.  They sought to prohibit the circuit court from enforcing its orders and to compel the court to disqualify Linker and Hershberg.

While the writ petitions were pending in this Court, Lucia's counsel filed a motion to supplement the record with correspondence between the circuit court and Allison Rule.  The circuit court conducted a lengthy hearing on February

---

[2] Kentucky Rules of Civil Procedure.

27, 2018, during which the parties and the court attempted to interpret the nature of the orders entered only a few weeks earlier and to find a way forward. As part of the discussion, counsel conceded that both parties had wanted at least some of the hearing to be conducted off the record, and the court agreed that it had determined that the entirety of the proceedings would remain off the record. The parties struggled to devise a means by which a record of the testimony taken at the January 29, 2018, hearing could be obtained to allow for adequate appellate review.

During this hearing (February 27, 2018), the court acknowledged that its February orders "smelled" like summary judgment and indicated that it anticipated that its ruling would come as a complete surprise to Daniel and the Transfer Companies. It also recognized that there were other issues in the case to be resolved. Counsel for Lucia and her associates contended that the court's order -- as entered -- could not be enforced as a judgment, however, and they complained that Daniel and the Transfer Companies intended to continue litigating the case. Counsel for Lucia argued that all the claims asserted by Daniel and the Transfer Companies warranted dismissal by virtue of the unclean hands doctrine. Counsel suggested that a final and appealable judgment could be entered upon that basis rendering moot Daniel's petition for writ of mandamus and writ of prohibition to

this Court. Counsel also contended that provisions of the Voidable Transactions Act applied.

Daniel and the Transfer Companies argued that only a trial could resolve the issues surrounding the failure of Lucia and her associates to see that the Transfer Companies' taxes had been paid and their alleged breaches of the Settlement Agreement and of the express warranty included in the Settlement Agreement. Counsel for Daniel argued that a trial date should be set. They explained how damages could be calculated based upon the cost to the Transfer Companies of resolving the undisclosed tax liabilities that they inherited from Lucia and her associates. The circuit court acknowledged that Daniel and the Transfer Companies might well be entitled to an award of damages based upon the alleged material misrepresentations concerning the financial well-being of the companies made by Lucia and her associates.

Ultimately, the court proposed that Lucia's counsel file a motion for summary judgment and suggested that the proposed judgment include findings of fact incorporating references to the unrecorded testimony. The court anticipated that the findings of fact included therein would be an adequate compilation of the record. The proposed judgment was to incorporate a figure based upon the parties' computations of Daniel's delinquent payments toward the purchase price of the Transfer Companies and an acceleration of the remaining balance.

Lucia and her associates filed a motion for final judgment on March 22, 2018. They requested an order: (1) dismissing the second amended complaint filed by Daniel and the Transfer Companies; (2) declaring a default under the parties' 2015 Settlement Agreement; and (3) accelerating the balance of the unpaid installment payments. They sought judgment in an amount that included the outstanding balance of the purchase price of the Transfer Companies. No rule of civil procedure was cited in support of the motion.

Daniel and the Transfer Companies strenuously objected to the motion. They observed that Lucia and her associates had not denied that they had caused the Transfer Companies to incur several million dollars in unpaid tax liabilities and that they had failed to disclose this fact to Daniel -- despite an obligation to do so under the terms of the Settlement Agreement. They argued that they were entitled to pursue their claims for damages through discovery and trial.

At a hearing conducted in April 2018, Daniel and the Transfer Companies contended that Lucia and her associates had never asserted a claim under the Voidable Transactions Act. In response, counsel moved orally to amend the counterclaims that they had asserted in March 2017. These counterclaims had been filed in response to the amended complaint filed by Daniel and the Transfer Companies in February 2017 in which Daniel asserted claims of breach of contract, fraud, and negligent misrepresentation; and the Transfer Companies alleged that

Lucia and her associates as owners and directors of the Transfer Companies had breached their fiduciary duties to the business entities. Lucia and her associates sought to include in the amendment to their counterclaims a specific claim for relief under the provisions of the Voidable Transactions Act, KRS 378A.005, *et seq.*

On May 3, 2018, the circuit court entered its findings of facts, conclusions of law, order, and judgment, granting the motion of Lucia and her associates to amend their counterclaim. Additionally, it reiterated its earlier conclusion that the failure of Lucia and her associates to include the Transfer Companies' unpaid tax liability in the financial statements warranted and delivered to Daniel could not have been material to Daniel's decision to enter into the Settlement Agreement. Next, the court dismissed Daniel's claims for breach of contract, fraud, negligent misrepresentation, and breach of warranty; it also dismissed the claims of the Transfer Companies against Lucia and her associates.[3] It denied Daniel's equitable claims for rescission, unjust enrichment, and promissory estoppel.

The judgment provided that Lucia and her associates were entitled to immediate judgment against Daniel in the amount of $1,525,000, to be paid within

---

[3] At this point, the Transfer Companies no longer had a viable claim or interest in this case. All of the claims were dismissed and were not raised in this appeal. (Nor were they mentioned in the prehearing statement). *See* Appellees' brief, page 2, footnote 1.

ten days of entry. If not paid within ten days, Daniel's obligation to pay the purchase price would be accelerated, and he would owe the full amount of the remaining purchase price from the Settlement Agreement, totaling $1,749,964.20, plus prejudgment interest. Daniel was enjoined and prohibited from re-routing customers from the Transfer Companies to Apelo, and he was ordered to provide an itemization of all the bank accounts of the Transfer Companies. The order restored Lucia's right to monitor the business activities of the Transfer Companies pursuant to the terms of the Settlement Agreement, and Daniel was ordered not to interfere with or to frustrate her ability to do so. The court explained that its decision to dismiss the claims asserted against Lucia and her associates was bolstered by its inherent power to sanction bad-faith conduct. It concluded that Daniel's second amended complaint and the litigation that followed were "part of an apparent strategy to 'bust out' the assets of the Transfer Companies, and perpetrate a fraud on [Lucia and her associates]." Order entered May 3, 2018, at 15. The subsequent motion to alter, amend, or vacate was denied, and this appeal followed.

On appeal, Daniel and the Transfer Companies argue that the circuit court erred by granting summary judgment and by failing to disqualify opposing counsel. We agree in part. Thus, we vacate in part and remand for further proceedings.

Summary judgment is proper where there exists no material issue of fact, and the movant is entitled to judgment as a matter of law. CR 56; *Steelvest, Inc. v. Scansteel Service Center, Inc.*, 807 S.W.2d 476 (Ky. 1991). We review *de novo* the trial court's grant of a motion for summary judgment. *Caniff v. CSX Transp., Inc.*, 438 S.W.3d 368 (Ky. 2014).

Daniel and the Transfer Companies first argue that the circuit court erred by ordering summary judgment, *sua sponte*, after the first day's testimony at the injunction hearing. They contend that they were deprived of a meaningful opportunity to be heard before the court issued its order. Furthermore, they argue that the order resolved an issue that was not the focus of the injunction hearing; namely, Daniel's contention that his non-performance of the Settlement Agreement was excused by Lucia's breach of its terms.

In *Storer Communications of Jefferson County, Inc. v. Oldham County Board of Education*, 850 S.W.2d 340 (Ky. App. 1993), we considered the decision of a trial court to award a judgment on the merits without notice to the parties and without the benefit of briefing or opportunity for arguments. We held that this procedure violated the appellant's right to due process. We observed as follows:

> While a court might be justified in using its inherent powers to dismiss *sua sponte* for lack of subject matter jurisdiction, it is fundamental that a trial court has no authority to otherwise dismiss claims without a motion, proper notice and a meaningful opportunity to be heard. CR 56.01 and CR 56.02 clearly provide that a "party"

> may seek a summary judgment. The rules do not contemplate such a proceeding on the court's own motion. CR 56.03 provides that one will have a minimum of ten days to respond to such a motion. This requirement is mandatory unless waived. Even if it is appropriate for the trial court to enter a summary judgment on its own motion, the trial court's failure to afford the appellant the most basic procedural protections, notice of its intention and an opportunity to respond, is unjustifiable, constitutionally defective, and requires reversal.

*Id.* at 342 (citation omitted).

In this case, the circuit court heard testimony concerning Daniel's operation of the Transfer Companies during a hearing conducted for the purpose of evaluating the claim of Lucia and her associates that Daniel was wrongfully re-routing customers from NECC to Apelo. Based on this evidence, the court concluded that Daniel was not entitled to suspend his performance of the Settlement Agreement by withholding his installment payments -- despite the failure of Lucia and her associates to disclose the massive tax liabilities of the Transfer Companies. Reviewing the day's testimony, the court determined that Daniel's failure to bring the Transfer Companies' outstanding tax bills current proved -- as a matter of law -- that the undisclosed tax liabilities were immaterial to his decision to purchase the businesses. It concluded that Daniel's bad conduct (failure to pay taxes and decision to wind up NECC's business) precluded him from seeking any equitable remedy for Lucia's breach of the parties' Settlement

-16-

Agreement. However, these arguments were not propounded by any party. And no party requested a summary judgment with respect to Daniel's claims. Nevertheless, the court terminated the proceedings, and its written orders were entered a few days later.

We cannot agree with the contention of Lucia and her associates that the court's order of February 2, 2018, was not a "*sua sponte* summary judgment." After precluding the presentation of further testimony and explaining its rationale for terminating the proceedings, the circuit court announced from the bench that it would "put all of that in a ruling that will allow either side, if they're unhappy with what we're doing, . . . to take everything up. . . ." It suggested that Daniel's counsel "take some time and think about it – you got thirty days – but it, it . . . I guess I could call it a final ruling although it really isn't a final and appealable kinda ruling. . . ." (The orders were eventually made final and appealable by entry of the court's final judgment on May 3, 2018). The court substantively made a summary disposition of the issues set forth in the order.

We agree with the sound reasoning of the circuit court that Daniel was not entitled to equitable relief in the form of an injunction because he indeed approached the tribunal with "unclean hands." Therefore, we affirm that portion of the February 2, 2018, order denying Daniel's motion for a temporary injunction.

However, as to the remaining substantive issues, the court's *sua sponte* summary judgment denied Daniel a meaningful opportunity to be heard with respect to its conclusions. Consequently, the remainder of that order must be vacated and remanded for further proceedings.

Next, Daniel and the Transfer Companies argue that the circuit court erred by granting the motion of Lucia and her associates for judgment filed on March 22, 2018.

In their motion filed pursuant to the circuit court's suggestion, Lucia and her associates sought an order: (1) dismissing the second amended complaint filed by Daniel and the Transfer Companies; (2) declaring a default under the parties' Settlement Agreement; and (3) accelerating the balance of the installment payments. In their response, Daniel and the Transfer Companies argued that there was no basis in the law to summarily dismiss their claims.

In its order entered on May 3, 2018, the circuit court granted Lucia's motion and dismissed Daniel's claims for breach of contract, fraud, negligent misrepresentation, and breach of warranty -- as well as the Transfer Companies' claims against Lucia and her associates. While the circuit court specifically acknowledged Daniel's request for trial, it concluded that "any such effort will do little (or nothing) to bring closure to the case." Instead, it sought to "sav[e] [the]

litigants from each other" by "mov[ing] [the] matter on" and granting a final judgment. Order entered May 3, 2018, at 19. It observed that a trial would be:

> in a practical sense, not really possible [because] key witnesses on how the companies have been run will be required, assuming they have competent counsel advising them, to decline to answer many questions lest they incriminate themselves in sworn testimony as having participated in criminal misconduct.

*Id.* The court further mused as follows: "why have a trial just so Daniel can take the stand and admit (or imply by his silence) that he has broken the law?" Finally, the court concluded that if Daniel had been "actually interested in airing all of this at trial, he would have been negotiating settlements with various taxing entities and thus be prepared to offer real evidence of the actual cost to the companies of their unpaid tax liabilities." *Id.* According to the judgment, its entry was based upon Daniel's inability to show that he relied to his detriment upon the representations and express warranty of Lucia and her associates. The circuit court also stated that the dismissal of the claims included in the second amended complaint was consistent with its inherent authority to sanction Daniel's bad-faith conduct -- his decision to file a second amended complaint and to engage in litigation as a strategy to strip the Transfer Companies of their assets and thereby to perpetrate a fraud upon Lucia and her associates.

We are persuaded that the circuit court erred by substituting its judgment in lieu of granting a trial. In *Steelvest, Inc.*, 807 S.W.2d at 483, the Supreme Court of Kentucky held as follows:

> We adhere to the principle that summary judgment is to be cautiously applied and should not be used as a substitute for trial. As declared in *Paintsville Hospital*, it should only be used "to terminate litigation when, as a matter of law, it appears that it would be impossible for the respondent to produce evidence at the trial warranting a judgment in his favor and against the movant." It is vital that we not sever litigants from their right of trial, if they do in fact have valid issues to try, just for the sake of efficiency and expediency.

Summary judgment could not have been properly entered upon the basis of the court's desire to "save the litigants from one another" or to "move the matter on." Order entered May 3, 2018, at 1. Nor could it have been entered based upon the circuit court's inability to see any sense in a trial or its perception that a litigant is not sufficiently interested in resolving the issues. None of these justifications legally supports entry of summary judgment, although its human motivation is clearly understandable under the circumstances of this case.

The circuit court also concluded that Daniel could not prove the claims included in his second amended complaint because he was unable to show that he relied to his detriment upon Lucia's representations and express warranty concerning the financial condition and operations of the Transfer Companies. Summary judgment can be granted where it appears that it would be impossible --

-20-

as a matter of law -- for the non-movant to produce evidence at trial warranting a judgment in his favor.

Daniel argues that the circuit court erred by granting judgment in favor of Lucia with respect to his breach-of-contract claim because reliance is not an element of this claim. We agree.

In their response to the motion of Lucia and her associates for final judgment, Daniel and the Transfer Companies explained that upon the sale of the Transfer Companies, Lucia attested that she had provided financial documents that "fairly present the financial condition and operating results of the Transfer Companies . . . in all material respects. . . ." Referring to evidence procured through discovery, they argued that her promise was patently breached because Lucia concealed from Daniel the fact that the Transfer Companies had accrued massive liabilities for unpaid state and federal taxes and other items during the time that she managed the companies.

Actions for fraud, negligent misrepresentation, breach of warranty, and promissory estoppel require the plaintiff to prove his justifiable reliance upon the defendant's representation. However, an action for breach of contract requires only proof of the existence of a contract, breach of that contract, and that the breach caused damages. *EQT Prod. Co. v. Big Sandy Co., L.P.*, 590 S.W.3d 275 (Ky. App. 2019). The circuit court erred by granting summary judgment to Lucia

and her associates with respect to Daniel's claim for breach of contract because Daniel was not required to show his detrimental reliance upon the representations.

In their brief, Lucia and her associates suggest that the circuit court's judgment can be affirmed on the basis of Daniel's attempt to use the judicial process to authorize a fraud. To the extent that the court's dismissal of Daniel's breach-of-contract claim was based upon its inherent power to protect the integrity of its judgments, it must be reversed.

Conduct that works a fraud or constructive fraud on a tribunal and has a detrimental effect on the accuracy or integrity of a judgment does warrant a remedy that prevents a party from benefitting from his misconduct. *Zurich Am. Ins. Co. v. Journey Operating, LLC*, 323 S.W.3d 696 (Ky. 2010). In this case, Lucia and her associates argued that Daniel's decision to file a complaint and to pursue his claims for Lucia's failure to disclose the massive tax debt of the Transfer Companies constituted just such conduct. The circuit court accepted the argument and found that litigation that lasted for a period of *less than one year* was "part of an apparent strategy to 'bust out' the assets of the Transfer Companies, and perpetrate a fraud on [Lucia and her associates.]" Order entered May 3, 2018, at 15. We see nothing in the facts and circumstances of this case which would support a decision of the circuit court to dismiss Daniel's claims as a sanction for misconduct.

The terms "break out" or "bust out" scheme have been used broadly to describe various plans implemented by bad actors: to dupe creditors into extending credit; to incur substantial debt; and, ultimately, to leave creditors unpaid. In this case, the circuit court concluded that Daniel engaged in a premeditated scheme to buy out Lucia's interest in the Transfer Companies; to loot the companies; and then to disappear before he completed making the installment payments for their purchase. It found that the claims included in Daniel's complaint had never had merit and were "an apparent pretext to conceal the fraudulent and unlawful scheme to defraud [Lucia and her associates] as well as the Transfer Companies' other creditors." *Id.* at 16. With respect to the litigation aimed at having the Transfer Companies' former lawyers disqualified from representing Lucia and her associates in litigation adverse to the companies' interests, the court concluded that that litigation was simply a "cover for a series of fraudulent and voidable transfers" designed to drain the companies' assets. *Id.* at 17. Finally, it observed that:

> to the extent that Daniel and his counsel have insisted on keeping evidence of Daniel's misconduct out of the record, based on the unsupported assertion that doing so would be necessary to protect proprietary information and the interests of all parties, Daniel has invited the Court to become an active participant, at least in shielding this fraud from the light of day.

*Id.* at 15. However, the record does not support these findings.

The circuit court concluded that Daniel devised a scheme to loot the Transfer Companies before he purchased them. The court's findings overlook the fact that Daniel acquired the Transfer Companies only after an extended period of wrangling with Lucia following their divorce about the operations of their interconnected companies. The findings overlook evidence indicating that Daniel discovered the massive tax debt that the Transfer Companies had incurred under Lucia's management **only after** the Settlement Agreement had been executed and that Daniel's inability to bring current the substantial tax arrearage was a function, in part, of the Transfer Companies' income. The findings did not adequately assess the viability of Daniel's claims for breach of contract and fraud against Lucia and her associates or the claims of the companies against their former owners and directors. The court summarily discounted arguments concerning the conflict of interest of opposing counsel in their representation of Lucia and her associates against their former clients.

Daniel and the Transfer Companies have also argued that the circuit court erred by failing to disqualify opposing counsel. Having acquired the Transfer Companies, Daniel and the companies filed a motion in early 2017 to disqualify Alan Linker and Paul Hershberg, the companies' former attorneys, from representing Lucia and her associates. The Supreme Court of Kentucky provided the following summary of the events that followed:

-24-

The trial court conducted a hearing on February 3, 2017 and determined that the September 2015 Settlement Agreement contemplated that Linker and Hershberg would continue to represent Lucia in this case, and therefore Daniel waived any perceived conflict. In denying the motion to disqualify, the trial court stated it was conceivable that Linker and Hershberg's continued representation of Lucia would implicate SCR 3.130(1.9) if they actually used or threatened to use confidential information they obtained through their representation of the companies in a way adverse to the interest of those companies. But since Daniel was not alleging that such misconduct had occurred, and the court did not expect it to arise, disqualification was not warranted. Notably, Daniel did not seek a writ following this February 2017 denial of the attorney disqualification motion.

Over the next few months, the parties engaged in ongoing discovery efforts. On August 23, 2017, Daniel filed a renewed motion to disqualify Linker and Hershberg. The trial court conducted another hearing, where Daniel's expert, an attorney specializing in legal ethics, testified that the Settlement Agreement could not constitute a waiver. Linker and Hershberg did not present any evidence at the hearing. On December 12, 2017, the trial court orally indicated that it intended to deny the renewed motion to disqualify.

*Popa*, 2019 WL 2462307, at *2.

In its order entered February 5, 2018, the circuit court reiterated its earlier determination that disqualification of Lucia's attorneys was not warranted. The court found that Daniel had not shown an actual conflict of interest and that it would be inequitable to remove Linker and Hershberg from the representation.

-25-

On February 15, 2018, Daniel and the Transfer Companies filed a petition for a writ of mandamus with this Court. They sought to compel the circuit court to disqualify Linker and Hershberg. On May 3, 2018, while the petition was pending, the circuit court entered its Findings of Fact, Conclusions of Law, Order and Judgment. Because the judgment disposed of the case on its merits, we dismissed the writ petition as moot. We reasoned that a writ is an extraordinary remedy used to prevent potential injury -- not to remedy injuries that have already occurred. Concluding that Daniel and the Transfer Companies have an adequate opportunity for recourse through this direct appeal, the Supreme Court of Kentucky affirmed our decision. *Popa*, 2019 WL 2462307, at \*4-5.

On appeal, Daniel and the Transfer Companies now contend that the circuit court abused its discretion by failing to disqualify Linker and Hershberg from the representation because the attorneys have an ethical conflict of interest. They argue that Linker and Hershberg represent interests in direct opposition to the interests of the Transfer Companies (their former clients) and that they failed to secure a written waiver for such conduct. Daniel and the Transfer Companies argue that Linker and Hershberg obtained confidential and proprietary information about the companies during their former representation and that they have used and likely will continue to use that information to the companies' disadvantage and extreme prejudice. Those allegations may be true. However, the Transfer

Companies have raised no argument on appeal with respect to the dismissal of their claims against Lucia and her associates. Consequently, the Transfer Companies have no interest in the proceedings to be conducted on remand. The existence of an actual conflict of interest between Linker and Hershberg and their former clients that might require disqualification of the attorneys is moot.

In summary, we AFFIRM the denial of the motion for a temporary injunction in the order of February 2, 2018. We VACATE the summary judgment entered on February 2, 2018, and REMAND the issues contained therein for additional proceedings. We AFFIRM the dismissal of the second amended complaint (Findings of Fact, Conclusions of Law, and Order and Judgment of May 3, 2018) -- with the sole exception of Daniel's claim for breach of contract, an issue which also must be resolved on REMAND. We DENY AS MOOT the arguments related to the disqualification of counsel (Linker and Hershberg) because the Transfer Companies will not be parties to the litigation on remand, their claims having been dismissed in the second amended complaint, that portion of which we have hereby AFFIRMED.

ALL CONCUR.

BRIEFS FOR APPELLANTS:

Jill F. Endicott
Jeremy S. Rogers
Philip E. Cecil
Bryan J. Dillon
Louisville, Kentucky

BRIEF FOR APPELLEES:

David Tachau
Paul Hershberg
Alan N. Linker
Louisville, Kentucky